64 U.S. 255
 23 How. 255
 16 L.Ed. 454
 THE UNITED STATES, APPELLANTS,
v.
WILLIAM BENNITZ.
 December Term, 1859
 
 THIS was an appeal from the District Court of the United States for the northern district of California.
 It was a claim for five leagues of land on the Sacramento river, which was presented to the board of commissioners with the following evidence and result:In this case, the petitioner has placed on file an application made by him to Governor Micheltorena, on the 18th day of June, 1844, and states in his petition that the same was referred to John Sutter for his opinion, and that on the 16th day of July, 1844, the said Sutter reported in favor of the issue of a grant, and the signatures of the said Micheltorena and the said Sutter being satisfactorily established by proof.
 Here the proceeding on the part of the petitioner ends.
 The board are of opinion that no sufficient proofs have been offered to entitle the said petitioner to a confirmation, and that the same should be rejected. Rejected.
 Additional evidence was produced to the District Court, viz:
 June 18, 1844. Petition of Bennitz for a tract of land called Breisgan, five leagues on the Sacramento river.
 Same day. Referred to Jimeno, and by him to Sutter for report.
 July 16, 1844. Report by Sutter that the land is unoccupied.
 July 26, 1844. Jimeno's recommendation that it should wait until the Governor can visit the Sacramento; to which the Governor says: 'Let him occupy it provisionally until I go up to conclude it.'
 These documents were proved by J. J. Warner, who swore that he believed the signatures of Micheltorena, Jimeno, and Sutter, to be genuine.
 December 22, 1844. Micheltorena's general grant to J. A. Sutter.
 John A. Sutter, being called as a witness, says that Bennitz was one of the persons to whom the general grant applies.
 Ernest Rufus says that Bennitz served in 1844 under Micheltorena, as a member of the Sacramento riflemen, &c.
 Adolph Brenheim (another German) says that one Julien, a Frenchman, had possession of the land for a while as tenant of Bennitz.
 The District Court confirmed the claim, and the United States appealed to this court.
 It was argued by Mr. Stanton for the United States, and by Mr. Benham and Mr. Gillet for the claimant.
 Mr. Stanton contended that this case fell within the decision of the court in 21 Howard, 408, 412, where Sutter's general title is set forth.
 The counsel for the claimant contended that this case was to be distinguished from those cases as follows, which is taken from the brief of Mr. Gillet:
 First. Bennitz acquired an interest in the land claimed by virtue of the license granted by Micheltorena on the 26th of July, 1844.
 Bennitz petitioned for the land in the ordinary manner. It was referred to the secretary, and by him sent to Sutter for report. The latter reported favorably. On returning the papers to the Governor, the secretary suggested that the formal grant of the legal title should be delayed until the Governor should visit that part of the country, and dispose of the previous applications. Thereupon the Governor authorized Bennitz to take possession and hold it until he should go up and conclude the matter of the grants. He endorsed: 'Let him occupy it provisionally until I go up and conclude the matter.' But he never went up.
 This conferred a right of possession and occupancy which has never been revoked. The petitioner took possession by his agent, and occupied for fifteen or eighteen months, until the agent was killed by the Indians, as in Reading's case, and he continued to claim the land.
 On the 22d of December, 1844, Micheltorena gave what is denominated the 'general title,' which was intended as a confirmatory grant of this and other lands. This satisfied Bennitz that he had acquired a legal title, and he continued to occupy down to 1846, (when his agent was killed,) and he also continued to claim the land.
 This case is clearly distinguishable from those of Sutter and Nye, decided at the last term, (21 How., 170, 408.) In each of those cases there was a petition, a reference, and a report by the local officer, but no further action by the Governor in either. All rested upon the subsequent general title.
 In Sutter's claim for the sobrante there was a petition and favorable report, but no further action. Mr. Justice CAMPBELL, in the opinion of the court, says 'that the Governor reserved the subject for consideration until he could visit the Sacramento valley, and that the papers were returned to the claimant.' (21 How., 179.)
 In Nye's case he said: 'The secretary referred the petition to Senor Sutter, commissioner of the frontier of Sacramento. Sutter certifies, on this reference, that the land is now unoccupied. His certificate is dated the 29th of January, 1844. There is no evidence to show that these papers were returned to Micheltorena, or that he ever saw the certificate. They are produced by the claimant. The remainder of the evidence consists of what is termed' Sutter's general title. (21 How., pp. 409, 410.)
 In Bassett's case, there was no evidence that possession had been taken of the land or improvements made by the grantee, nor that he performed any act in confidence that he had acquired any interest therein. The case does not show that he believed he had acquired any rights, or that he sought to exercise any. There is no evidence of the Governor's understanding in relation to that particular case. There is nothing to show that Bassett expended time or money, on the strength of his belief that he had received any right to the land, or that he expected a legal title would be conferred upon him as a necessary and proper conclusion of what had previously been done.
 The case at bar presents quite a different aspect from either of those decided at the last term. Bennitz made application for a grant in the usual manner, and received a license to occupy until the Governor should act after a personal examination. Bennitz treated this as conferring a substantial right. He caused a settlement and improvements to be made, and cattle to be placed on the land. The person whom he placed on the land lived on it near a year and a half, until he was killed by the Indians. He himself served the Government in the army, and was assured by the Governor that his grant had been confirmed. He believed it, and acted accordingly. Both he and the representative of the Government (the Governor) apparently entertained the same opinion upon this subject. Both believed that Bennitz had rights to the land. No one interfered to denounce the land, or meddle with or question Bennitz's rights. Things remained unchanged until the Government changed hands. No steps have ever been taken to deprive him of his claim. The representative of Mexico did what he thought would confirm Bennitz in his title. Bennitz, like many others, thought the general title, granted the same year, rendered his rights perfect. He continued his possession, and took steps towards further settlement, either by way of tenancy or sale, and submitted his papers to a proposed purchaser, by way of showing that he had rights.
 True, all this did not create legal title. But it did create an equitable title, of a distinct and unquestionable kind. The steps taken, and acts performed, created an interest in Bennitz, which was of value to him, and which really cost him something. He took the incipient steps to acquire title, and the representative of Mexico concurred in them, and conferred a right which he was to look after at a future day, and, if all was right and proper, he would convert what he then did into a legal title.
 Bennitz had done all on his part, and there was nothing in the way of the Governor conferring perfect legal title. It was no fault of Bennitz that it was not actually done. Mexico assented to his rights, by leaving him in the quiet and full possession of the land down to the treaty.
 Would Mexico ever have questioned Bennitz's rights? Certainly she did not; and by taking possession and making improvements, Bennitz paid the usual consideration required to secure a perfect grant. By not giving him notice that his rights would not be recognised, Mexico led him into expenses that he would not otherwise have incurred. She, by the acts of her lawful representative, induced Bennitz to go on and expend money in improvements. She told him he might go into possession until she should determine that he could not have the land. She sent him word that his land was confirmed to him. She sent out a broad paper, inducing him to believe that perfect title had been made to him. He confided in these acts, which were of a character calculated to secure his confidence. There is no evidence that Mexico did not really mean what she said. While she remained the sovereign there, she never questioned the act of her representative, even after he was driven from the country by local enemies.
 These acts of Mexico created clear equitable rights in Bennitz, and they have never been forfeited or taken from him. They existed when, by the treaty, the United States succeeded to the rights of Mexico. Bennitz's rights were good, and bound the conscience of Mexico until they were divested according to law, which has not yet occurred. Since the purchase by the United States, they have not been changed. No branch of our Government could change them against Bennitz. They are now just what they were under Mexico, when he was occupying and improving the land.
 This court cannot take away any right, however small, which he then had; but it must confirm it, if it was a right at all, which, in the ordinary course of events, if there had been no change of Government, would have ripened into a legal right. If the Government of Mexico had done any act which conferred such a right, whether it had ripened into a perfect right or not, then, in equity and good conscience, our Government is bound to recognise that right, and to confirm it to the claimant, freed from all claim on its part.
 The court can, under the law of 1851, declaring the rights of parties, declare an inchoate right to be a legal and perfect one. It can do what Mexico would have done under the circumstances. But it cannot deprive the party of any right, however trifling, which had become his, either in law or equity.
 The cases heretofore passed upon in this court have involved only legal titles. No case has presented a simple equitable title. The statute recognises equitable titles as proper for the court to pass upon and confirm.
 In the Louisiana and Florida cases, the party desiring land petitioned for it, and obtained an order to survey; and when the survey was made, occupancy conferred an equitable title, which this court would confirm. The petition in California is the same, except it is usually accompanied with a map, which rendered the survey unnecessary. The reference to ascertain whether the land was vacant, and the report thereon in California, were equal to a survey in Florida and Louisiana. Occupancy in the latter places completed the equitable rights of the party. In California, when occupancy follows the petition, reference and report, and permission to occupy, the effect must be the same. The party has everything that he could have, except the formal grant, which would confer perfect legal title. When the case falls short of legal title, but there is something of it, then it must be an equitable claim; and if that exists, then the court must confirm it.
 There was something in this case which was treated by Mexico and the claimant as an interest. There was an application for a definite spot which was not occupied, and it was so reported, and permission given to occupy until further action by the Governor, and then there was possession and continued occupancy. Mexico could not have recovered against him as a trespasser, after the license and occupancy under it; and no one denouncing the land, the Governor could not eject him. Here were tangible facts. The claimant thought he had some rights, and no one questioned them. He was told his title was confirmed, and a formal document followed. Here was something of substance. Not being a legal title, but still being something which would affect the conscience of Mexico, it was clearly an equity. If it was an equity, this court is bound to recognise and confirm it.
 Mr. Justice CAMPBELL delivered the opinion of the court.
 
 
 1
 The claimant applied to Micheltorena, in 1844, for a concession of five square leagues of land, lying in the valley of the Sacramento river, and bounded on the west by that stream. The petition was referred to Captain Sutter, who reported that the land was vacant.
 
 
 2
 The secretary reported, that the Governor having deferred any action upon petitions like the present, until he could make a visit to the region of the Sacramento and San Joaquin, it would be proper to dispose of this in the same manner.
 
 
 3
 The Governor so ordered, authorizing the applicant to take provisional possession, until he could make his visit. The suit of the claimant was submitted to the board of commissioners on this testimony, and it was rejected, as invalid.
 
 
 4
 Upon appeal to the District Court, the claimant proved that he was a soldier in the war of Micheltorena, and an officer in one of the companies of Sutter. That the Governor acknowledged his services in that war, and verbally recognised the validity of his claim for the land specified, and that it would be perfected by means of the 'general title' of Sutter. The claimant also proved, that in March, 1845, two persons went upon the land, to make improvements under his claim. That one of them shortly after retreated, from fear of the Indians; that the other (Julien) made some improvement and cultivation, and occupied the land twelve or fifteen months, when he was killed by them. In the case of the United States v. Reading, 18 How., 1, it was proved that Julien occupied the land of that claimant.
 
 
 5
 The merits of the claims arising under the general title of Sutter have been discussed in the cases of Nye and Bassett, reported in 21 How. R., 408, 412. This claim is in all respects similar; and, for the reasons assigned in those cases, is invalid.
 
 
 6
 Decree reversed. Cause remanded, with directions to dismiss the petition.