## UNITED STATES *vs.* HENSLEY.

The paper made by Micheltoreno, and delivered to Sutter at Santa Barbara, on the 22d December, 1844, and called the "General Title," was not a title according to the laws, customs, or usages of the Mexican government, and all claims under it are invalid.

This case came up on appeal from the decree of the District Court of the United States for the northern district of California, being a private land claim, prosecuted by the appellee under the act of Congress passed March 3, 1851.

In his petition to the Board of Land Commissioners the appellee claimed confirmation of his title to a tract of land in Butte county, known by the name of Aguas Nieves, and containing six square leagues, which, he averred, had been granted to him by Governor Micheltoreno, in December, 1844. It appeared that he did, on the 25th of July, 1844, solicit Micheltoreno for a grant of the land in question. His petition was accompanied with a *deseño* or sketch. The Secretary of the Government (Manuel Jimeno) was ordered to give information, taking the steps he might deem necessary. Jimeno referred it to Señor John A. Sutter, captain and judge of New Helvetia, who reported, on the 2d of September, 1844, that the land solicited was unoccupied. There were many other applications of the same kind on which Sutter had also reported favorably. On the 18th of November Jimeno advised that this and all similar applications for land on the Sacramento river should be suspended until the governor could make a visit to that region. Very soon after that date the insurrection of Pico, Castro, Alvarado, and other "Chiefs of the South," against the authority of Micheltoreno, broke out. The American and other foreign settlers in the valley

· of Sacramento enlisted with great unanimity in his defence, and constituted the most efficient force he had. Hensley was among them. They were commanded by Captain Sutter. Many of them had, like Hensley, made applications for lands, and nearly all their applications were, like his, postponed until the governor could make his contemplated visit. After he had been compelled to leave Monterey, the capital of the department, and while he was at Santa Barbara trying to make head against the revolutionary movement, he was warned by Sutter that his banner might be deserted by the petitioners for lands, unless they should be satisfied of his (the governor's) good intentions towards them in that respect. Thereupon, Micheltoreno, on the 22d of December, 1844, at Santa Barbara, made and delivered to Sutter the paper which has been known as the "General Title," in which he said: "I confer upon them (the petitioners) and their families the lands described in their applications and maps to all and each one of them who has solicited and obtained favorable information from Señor Sutter up to this date, so that no one can dispute their title." Sutter was authorized to give each of them a copy of the document, "which," the governor adds, "will be known and acknowledged by all the civil and military authorities of the Mexican nation in this and the other departments."

Hensley, the claimant in this case, showed that he was within the terms of the general title, as having received before the date of it a favorable report from Sutter. He also proved that, though a native of the United States, he was a naturalized Mexican. Sutter, himself, testified that he had given him a copy of the general title, in conformity with the directions contained in it. But this copy was made out and given to the claimant on the 20th of April, 1845, after Micheltoreno was expelled from the country, and when Pico was in the full exercise of the functions of Political Chief. Hensley never received judicial possession of the land, but he proved that he entered upon it in 1845, built houses, ditched, fenced, cultivated, and used the land as his own.

There was no evidence that the "General Title" had ever

*United States vs. Hensley.*

been recorded by the Mexican authorities. The circumstances in which Micheltoreno was placed at its date were such as deprived him of all control over the records or over the officers who had them in custody.

The commissioners were of opinion that the document signed by Micheltoreno and delivered to Sutter, had the same force and effect as a grant made to each and every one of the appli cants, *nominatim;* that the subject-matter of it was sufficiently designated, because it could be made certain by reference to the petitions and maps, and that the want of a record was, under the circumstances, not conclusive against the right of the claimants. Upon these grounds the claim was admitted, and the title confirmed by the board. The same decree was made for similar reasons by the District Court (Judge McAlister) when the case went there. The United States then appealed to this court.

*Mr. Stanton,* for the *United States,* argued that Micheltoreno's general title to Sutter conferred no right that can be confirmed under the act of Congress to ascertain private land claims in California, and cited *U. S.* vs. *Bassett,* (21 How., 412;) *U. S.* vs. *Nye,* (21 How., 408;) *U. S.* vs. *Sutter,* (21 How., 179;) *U. S.* vs. *Burnett,* (23 How., 255;) *U. S.* vs. *Murphy,* (23 How., 476;) *U. S.* vs. *Rose & Kinlock,* (23 How., 262.)

No argument, oral or written, was made in behalf of the claimant.

Mr. Justice GRIER. The claim of the appellee in this case is under the deed of Micheltoreno, dated the 22d of December, 1844, commonly called the Sutter General Title. It differs in no material respect from the other titles or claims already adjudged by this court, in which this grant was in question. The cases of *U. S.* vs. *Nye,* (21 How., 408;) *Same* vs. *Bassett,* (ib., 412;) *Same* vs. *Bennitz,* (23 How., 255;) *Same* vs. *Rose,* (ib., 262,) settle the question that the claim of the appellee is invalid. The decree of the District Court is therefore reversed,

and the cause remanded, with directions to that court to dismiss the petition.

Decree accordingly.