Mr. Justice CAMPBELL
 

 delivered the opinion of the court.
 

 The appellee claimed, before the board of commissioners for the settlement of land claims in California, four leagues of land called “Wylly,” situate on the Sacramento river and the Arroyo de los Venados. His evidence consists of a petition addressed to Micheltorena, Mexican Governor of the Department of Californias, in December, 1848, at Monterey, representing that he was a native of the United States that he had resided in Mexico two years; that he had some horses and cattle, and desired to possess, a suitable place for them. The Governor referred this petition to the Secretary, Jiméno, to obtain the proper information on the subject. The Secretary referred the petition to Señor Sutter, commissioner
 
 {meargado)
 
 of the fron
 
 *410
 
 tier of the Sacramento. Sutter certifies, on this reference, that the land is now unoccupied. His certificate is dated 29th January, 1844. There is no evidence to show that these papers wei’e returned to Micheltorena, or that he ever saw the certificate. . They are produced by the claimant.
 

 The remainder of his evidence consists of what is termed, in the opinion of the board, “ Sutter’s general title,” which bears date the 22d December, 1844, and is as follows:
 

 “ Manuel Micheltorena, Brigadier General of the Mexican Army, Adjutant General of the
 
 Plana
 
 Mayor, Governor, Commandant General, and Inspector of the Department of the Californias.
 

 “ The Supreme Departmental Government being unable, in consequence of its incessant occupations, to draw up, one by one, the respective title papers (títulos) for those citizens who have solicited lands, with
 
 informe
 
 in their favor of Mr. Augustus Sutter, captain and judge chai’ged with the jurisdiction of New Helvetia and Sacramento:
 

 “In the name of the Mexican nation, I do by these letters confer upon them and their families the property of the lands designated in their respective applications
 
 (instancias)
 
 and maps,
 
 (disenos,)
 
 upon all and each one who have solicited (the same) and obtained the favorable
 
 informe
 
 of the aforesaid Mr. Sutter, up to the day of this date — so that nobody shall have power to question their right of property, a copy hereof, which Mr. Sutter shall hereafter give them, serving them for a formal title, with which they will present themselves to this Government, in order to extend the same title in due form and on stamped paper.
 

 “And that it inay remain firm and stable in all time, I give this document, which shall be recognised and respected by all the authorities, civil and military, of the Mexican nation, in this and the other Departments, authenticated with the military and governmental seals in Monterey, this twenty-second day of December, one thousand eight hundred and forty-four
 

 “MICHELTORENA.”
 

 “ I certify this is a copy.
 

 “
 
 New Helvetia, June 8th,
 
 1846.
 

 “ J. A. SUTTER.”
 

 
 *411
 
 The circumstances under which this order was executed appear from a deposition of Sutter to be found in the record. He says.: “ That this document was delivered to him at his request. .That the Governor was blockaded at Monterey, and would not deliver titl.es to the American and other immigrants who were desirous of obtaining lands, and he (Sutter) advised him to give them titles at once ;. and that the Governor had not time, to do it in any other way. He never knew that the Governor was blockaded until the courier • came with the paper above referred to.” ■ He ¡further testifies that the mode he had adopted iii giving titles to individual settlers was, to deliver certified copies.of this decree of Micheltorena to those who had rendered meritorious services to the country, and who applied to him. That Governor Micheltorena, at his request, made a speech to the soldiers, and promised lands .to all those whom he (Sutter) should recommend as worthy to receive them. The general title was issued before the men marched from New Helvetia'. He testifies that the lands were never measured, and there was no formal delivery of possession. There were no surveyors or means of measurement. "We have examined with particularity the Mexican laws of colonization in the case of the United States
 
 v.
 
 John A. Sutter, at this term, and it is not necessary to do so in this case. It is evident that this “general title ” had.no reference to those laws, as none of their requirements were considered when it was made. It is questionable whether the previous application of the claimant was before the Governor, or under the control of his subordinates, at its date. The'general title was sent to Sutter,, to enable him to raise a military force to assist the Governor, who was confined to his capital by the forces of the insurgent chiefs, who had determined to expel him from the country. His ability to comply with the expectations it encouraged depended upon the success of his efforts to maintain his authority in the Department, and to secure the sanction of the Supreme Government to the extraordinary measures he had adoptéd' for that purpose. The decree has no signification except as an appeal to Sutter, and the persons under his influence, to come to his relief, and as a promise to them that he
 
 *412
 
 would make a liberal distribution of land among them, in case they should faithfully and successfully assist him. in his extremity. ' But the issue of the war was fatal to Micheltorena, who was compelled to leave the country; and Sutter, his lieutenant and partisan, was made prisoner, and was - required -to abandon his chief, and to promise fidelity to his enemies. "Whatever power was conferred upon Sutter was abrogated then, if not before. The execution of the power conferred, if any, in favor of this claimant, did not take place for more than a year after the abdication of Micheltorena. "
 

 The opinion of the court is; that the claim of the appellée is invalid, and the decree of the District Court is reversed, and the cause remanded, with directions to that court to dismiss the petition. • ■