Mott *v.* Smith.

---

MOTT *et al.* v. SMITH.

IN ejectment on a patent from the United States for land under a Mexican grant, in which patent there was incorporated a plat of survey, on the margin of which was a memorandum that the land was surveyed, under the orders of the United States Surveyor General, by Von S., Deputy Surveyor, and that the field notes from which it was made had been examined and approved by the United States Surveyor General for California, and were on file in his office, plaintiff offered the patent in evidence, and defendant objected to the survey it set forth, on the ground that the Deputy Surveyor who made it was interested in the grant: *Held,* that the objection is untenable; that it is immaterial whether the Deputy

Mott *v.* Smith.

was, at the time, interested in the grant or not, as the approval of the survey by the Surveyor General and by the proper department at Washington imparted validity to the survey, and put it beyond the reach of attack in actions of eject-ment; that such approval was the judgment of the appropriate tribunal, that the survey was in conformity with the final decree of confirmation—this case having arisen previous to the Act of Congress, of 1860, giving the District Court supervision over the action of the Surveyor General, etc.

Under the decision in *Fossat's Case,* (21 How. 445) it may be true, that the juris-diction of the United States District Court previous to this Act of Congress embraced all questions as to the location and boundaries of the lands con-firmed, and could have been exercised to control the surveys of such lands until the issuance of the patent; but where no question was made as to the form or correctness of the survey, by proper parties, before the District Court, pending the proceedings for confirmation, the approval of the survey by the Surveyor General and by the Department at Washington was final.

Of that approval, and also of the regularity and validity of all the different pro-ceedings required by the Acts of Congress, from the filing of the petition of the claimant before the Board of Land Commissioners, to the issuance of the patent, the patent itself is, in an action of ejectment, not only evidence, but conclusive evidence against the Government and all parties claiming under the Government, by title subsequent, and against parties claiming no higher title than mere possession.

Where, in ejectment on a patent from the United States, reciting that the patentee had presented his claim to the Board of Land Commissioners, and that the claim was founded on a Mexican grant made to Pablo Gutieras "in the summer of 1844, by Captain John A. Sutter, who, according to the records of the Board, derived his authority to grant from Governor Micheltorena, on the twenty-seventh day of December, 1844," etc., it was objected to the introduction of the patent in evidence, that it rested on a grant from one who had no author-ity to grant: *Held,* that even conceding Sutter had no such authority, still, the tribunals established by the United States Government for the express pur-pose of ascertaining and determining the validity of grants claimed to have been issued by the Mexican Government having passed upon this grant and pronounced it valid, its validity cannot be questioned, either by the Govern-ment or by individuals claiming under the Government, either collaterally in ejectment, or directly in any other form of proceeding; that the validity of the grant has become the law of the case.

Where a deed has attached to it certificates of acknowledgment, made at the Hawaiian Islands, the one by a person who describes himself, in the body of the certificate, as "the principal Notary Public" of the Islands, and affixes to his signature a similar designation of his official character, with his Notarial seal; and the other by a person who describes himself, in the body of his cer-tificate, as "the Vice Consul of the United States of America, at Honolulu, Hawaiian Islands," and affixes to his signature the designation of his official character as "U. S. Vice Consul," and the Consular seal: *Held,* that the execu-tion of the deed was *prima facie* sufficiently proved to be admitted in evidence against the objection that the persons before whom the acknowledgments pur-

Mott *v.* Smith.

port to have been made were not shown to be the officers they represent themselves to be, and were not authorized to take the acknowledgments.

The general designation, in the fourth section of the Act of April 16th, 1850, as to conveyances of *any* Notary Public, or *any* Consul of the United States, embraces Notaries and Consuls of every grade—whether principal or inferior Notary, or Consul General or Vice Consul.

The certificates of a Notary Public or United States Consul, of acknowledgment of a deed, are *prima facie* evidence of the official character of the persons by whom they are given.

In the United States, certificates of the proof and acknowledgment of deeds executed in a foreign jurisdiction are generally received as *prima facie* evidence of both the character of the officers giving them and the genuineness of their signatures.

Where a deed of land in Yuba county, California, describes the grantor, William Johnson, as "of the Island of Hawaii, Sandwich Islands," and, after designating the property in which the interest of the grantor is conveyed as the tract situated in the county of Yuba, and known as "Johnson's ranch," and giving its boundaries, proceeds to state that the ranch was originally granted to Pablo Gutieras by the Mexican Government, and has since been confirmed *to the party of the first part,* by the Board of Commissioners to ascertain and settle private land claims in California; and then in ejectment on a patent from the United States to William Johnson, for this land—the patent being in evidence, and referring to Johnson as claimant, and as the person filing the petition before the Land Commission, for confirmation of his claim under the grant to Pablo Gutieras, but not mentioning the residence of Johnson—this deed is offered in evidence, and objected to, on the ground that there was no proof of the identity of the William Johnson of the deed with the William Johnson of the patent : *Held,* that the deed, from the identity of names, and by its reference to the source of title, contains sufficient *prima facie* evidence as to identity of person to admit it in evidence ; that before additional proof of such identity could be required, some circumstances must be shown to create doubts upon the point.

In this case, the original deed was produced in Court, and the case tried in Yuba county, where Johnson had formerly lived for years, and where his signature could, probably, have been easily proved or disproved, had there been any suspicion as to its genuineness.

Objections to evidence will not be noticed in the Supreme Court, unless taken in the Court below in the first instance, if they be of a character which might there have been obviated by the production of other evidence, or the release of the interest of witnesses, or an amendment to the pleadings, or in any other way.

Where objections to evidence, though not made in the Court below, could not be, under any circumstances, there obviated, such objections may be taken for the first time in the Supreme Court—as for example, objections to the substantive cause of action, not to its technical form of statement, and to the jurisdiction of the Court below, may be presented in the Supreme Court for the first time, or may be considered by the Court, whether its attention be directed to them or not.

Mott *v.* Smith.

Von S., Deputy United States Surveyor, was called as a witness, on behalf of plaintiffs in ejectment on a patent, to prove that the premises in controversy were within the calls of the patent, and in the occupation of defendant, and on his *voir dire* stated that he was married to a daughter of plaintiffs, and had, about two years previously, and after the patent was issued, purchased, in his own name, land covered by the grant, upon the confirmation of which the patent issued. Defendant objected to the witness, as interested in the grant as part owner, and on the ground that his wife was interested, and hence, that he was disqualified : *Held,* that the ownership of the witness in parcels of land covered by the grant, other than the premises in controversy, did not disqualify him ; that he could not, from such ownership, gain or lose by the direct legal operation and effect of the judgment, nor could the judgment be legal evidence for or against him in any other action.

A married woman cannot invest another with power to sell any interest she may possess in real estate, in the absence of a statute to that effect, and there is no such statute in this State.

To the efficacy of a conveyance of her real estate by a married woman, it is essential that she join with her husband in its execution, and state, on a private examination at the time, separate and apart from him, and without his hearing, that she executed the same freely, without fear of him, or compulsion, or undue influence from him, and that she does not wish to retract its execution. This private examination—this determination of the will as to the retraction of the execution—are not matters which can be delegated to another.

Where a power of attorney, relative to real estate, authorizes the agent "to grant, bargain, and sell the same, or any part or proportion thereof, for such sum or price, and on such terms as to him might seem meet," the agent has no power to make a conveyance in consideration of love and affection in the principal for the grantee in the conveyance, and such conveyance is on its face a nullity. The power of attorney authorizes a sale for a monied consideration only.

Where, in ejectment, plaintiffs, husband and wife, introduced in evidence a patent to one Johnson, covering the premises, a deed from Johnson to one Robinson, and a deed from Robinson to the wife, reciting, as its consideration, one hundred dollars, proved defendant to be in possession and rested, and defendant moved for a non-suit, on the ground that the evidence had not established any joint seizin or right of possession in plaintiffs, but had affirmatively established that there was no such joint seizin or right: *Held,* that the non-suit was properly denied ; that the monied consideration recited in the deed to the wife raises the presumption that the property was common property, the entire management and control of which, with the absolute right of possession and disposition, were vested in the husband.

*Held,* further, that this presumption can be overcome only by clear and satisfactory proof that the property was acquired with the separate funds of the wife.

In ejectment for common property, the action should be in the name of the husband alone. But if the wife be joined, the misjoinder is no ground of non-suit on the trial, though it would be ground of demurrer if the defect appeared on the face of the complaint, or for motion to dismiss, as to the wife, on the trial.

In ejectment on a patent, defendant introduced a witness who stated that he knew

where the defendant resided; that he knew where Dry creek was, and where it entered Bear river; that he knew no other Dry creek than the one named, and did not think there was any other creek by that name between the foot-hills and the mouth of Bear river. He was then requested to state, if he knew, whether the lands occupied by the defendant for the last two years or more, or any part thereof, lay below Dry creek and Bear river, the counsel declaring the object of the inquiry to be to show that the lands were not within the calls of the patent or grant. To this inquiry objection was made and sustained, on the ground that it did not relate to the starting point or monument named in the patent; the Court offering at the time to allow the witness to be asked whether the lands were situated below the oak tree marked as the commencement or first monument of the patent: *Held,* that the Court below did not err in ruling out the testimony, because the question put to the witness did not, as it should have done—limit the inquiry to that Dry creek, at the junction of which the marked oak tree stood—it appearing from a map, incorporated into the patent, that there were two streams emptying into Bear river, within the calls of the patent, each of which was termed Dry creek, and that below one of them, and above the other, the premises in controversy were situated; and it further appearing that the description in the patent commenced at an oak tree marked with a (x) and certain figures and letters, at the junction of Dry creek and Bear river, and the map designated the position of the tree—the starting point—as at the mouth of the lower Dry creek.

From the description in the patent, and from the map, the position of this starting point was fixed beyond doubt; and, as the witness stated he knew only of one Dry creek, the inquiry made of him and ruled out would only tend to mislead and confuse the jury, unless that inquiry were limited to the Dry creek at the junction of which the marked oak tree stood; and the ruling of the Court did not tend to exclude legitimate proof that the premises lay below the creek which the patent designated, but to require it to be directed to such creek, and not to the other creek of the same name.

Appeal from the Tenth District.

Ejectment to recover a tract of land in Yuba county, forming, as plaintiffs claim, part of Johnson's ranch.

Plaintiffs are husband and wife, and claim under a patent from the United States to one William Johnson. Verdict for plaintiffs; judgment accordingly, and defendant appeals.

The facts are fully stated in the opinion of the Court.

*McConnell and Garber,* for Appellant.

I.   The Court erred in admitting the patent and survey in evidence and excluding testimony going to establish that the Surveyor, Von Schmidt, was interested at the time of such survey, and therefore incompetent to make the same.

35

Mott v. Smith.

The ground of the Court's action in excluding the evidence was, that it tended to impeach the patent, and that the defendant did not stand in a position to do so successfully. The evidence was not offered ' with that view, though such a result might possibly follow incidentally.

The true ground upon which the evidence was offered, and which would authorize its admission by the Court, was, that by the rules of evidence of the Courts of this State, an act of a party interested was not admissible to establish title.

We admit the rule to be well established, that a third party cannot impeach a Government patent, except on the ground of fraud; and not even for fraud, according to the decisions of this Court. But we apprehend that a party claiming under a patent is not, for that reason, to be exonerated from proving his case according to our own local laws regulating the production of evidence.

Now, we assume it to be a well founded rule of law, that any official act whatever, to be valid, is to be performed by a person not beneficially interested in the act itself.

The rule as to judicial acts has long been established. In *Dr. Bonham's case*, the Court of K. B. held that even an Act of Parliament empowering a man to be a Judge in a cause wherein he is interested was a nullity. (*Dr. Bonham's case*, 8 Coke's R. 107, *a.*) The same was held to be law in the *Earl of Derby's case* (12 Coke's R. 113–114).

The same rule should apply with equal force to an official act of an executive nature.

It will, of course, be objected to this, that the Government, by issuing the patent, confirmed and ratified the survey. But we answer the objection by saying : First, that if the act was a nullity the Government could not ratify or confirm it : Second, that the Government could not, by confirming a void act, change or modify our rules of evidence. But it will further be urged, that the survey was an essential part of the patent, and that the one could not be introduced without the other.

We are aware of no law which makes the survey a part of the patent ; and even if such a law existed, it would not affect our position. The survey was intended to subserve a different purpose, viz : to establish the locality of the land granted—whereas the patent is the grant itself. Suppose, that instead of a patent, the plaintiff had claimed under a conveyance from an individual, and that such conveyance had been founded upon a survey by a party interested under it ; would such

survey have been admissible, merely because the grantor had made no objection to the correctness of the survey ? We think not. But there is the same reason for holding the rule to exist in one case as in the other.

II. The Court erred in admitting the conveyance from Johnson to Robinson. The only proof of the execution of this conveyance was the certificates of acknowledgment of Albert B. Bates, principal Notary Public of the Hawaiian Islands, and Geo. A. Lathrop, United States Vice Consul for Honolulu, Hawaiian Islands.

There was no proof introduced that Albert B. Bates was a Notary Public of the Hawaiian Islands, or that Lathrop was Vice Consul of the United States for the port of Honolulu.

Upon this ground, we contend that both certificates are insufficient ; and further, that the certificate of the Vice Consul is no evidence of execution, because he was not competent, by our law, to take acknowledgments.

The respondent will, doubtless, contend that the act of the foreign Notary, like his protest of a bill of exchange, authenticates itself.

We admit that the law goes thus far in respect to notarial protests, etc., but maintain that it is an exception to the general rule, depending upon principles of international and commercial law, which do not and cannot apply to the case at bar. (2 Greenleaf on Ev. sec. 183 and cases cited.)

The question here presented depends upon principles precisely identical with those which govern the taking of depositions abroad. Our statute, it is true, authorizes foreign Notaries to certify acknowledgments. (Wood's Dig. 100, art. 341.)

So our Practice Act authorizes depositions abroad to be taken by County Judges and Justices. There is the same reason, therefore, for saying that the certificate of a foreign Judge or Justice proves itself, as there is for saying that the certificate of a foreign Notary does. (See *Bowen* v. *Bean*, 7 Chipman R. 176 ; *Patterson* v. *Patterson*, Id. ; *Shepherd* v. *Thompson*, 4 N. H. 213 ; *Wheeler* v. *Shields*, 2 Scam. 348; *Dean* v. *Tygert*, 1 A. K. Marshall, 172 ; *Talbot* v. *Bradford*, 2 Bibb, 316.)

The presence of a seal to the certificate does not affect our argument. Seals may be counterfeited as readily as signatures ; but our objection goes not to the want of proof of genuineness of either seal or signature, but to the want of proof of authority in the person who used them. In other words, we hold that the impression of a seal only authenticates

the certificate as the act of the person whose act it purports to be, but does not tend to establish his official character.

The foregoing observations are as applicable to the Vice Consular certificate as to that of the Notary, with this difference only, that the Vice Consul is an officer of our Federal Government, and the Notary an officer of a foreign Government. This, however, can make no difference, because for nearly all judicial purposes the Federal Government is as foreign to us as that of the Hawaiian Islands.

Another objection to his certificate is, that our statute does not authorize him to take acknowledgments of deeds abroad.

The act mentions " Ministers, Commissioners or Consuls " appointed *to reside in foreign Kingdoms, etc., as competent to take the acknowledgment of persons executing deeds there, etc.* The term " Consul " does not include Vice Consul. Commercial agents are classed by writers upon international law as follows :

1. Consuls who, generally speaking, exercise consular jurisdiction in a single port, or a particular district of the country to which they are accredited.

2. Consuls General, who exercise their functions over several places, and sometimes a whole country.

3. Vice Consuls, whose jurisdiction is confined within narrower limits than that of Consuls. (2 Phillimore's Law of Nations, 235–248 ; 15 Law Library, 6th series ; 1 Kent's Comm. 41 ; Wheaton's Law of Nations, 282.) Though performing similar duties within their respective spheres, these officers are really distinct and independent of each other. (See also Acts of Congress of April 14th, 1792, Ch. 24, and of February 28th, 1803, Ch. 62 ; Kent's Comm. secs. 43, 44.)

Again : There was no proof of the identity of Johnson of the deed with Johnson of the patent. The Court will observe that the patent is issued to William Johnson, a resident of California; and the deed is executed by a person of the same name, it is true, but resident in the Hawaiian Islands. Now, we contend that identity of name is not sufficient evidence of identity of person, especially when it is made to appear, as in this case, that the one mentioned in the patent resided in California, and the one mentioned in the deed resided in a distant country.

The law presumes, from the fact that William Johnson of the patent resided in California at the time it issued, that he still resides here, and from the fact that William Johnson of the conveyance executed it in

the Hawaiian Islands, and was known to the officers there, that he resided there. (*Prather* v. *Palmer*, 4 Pike [Ark.] R. 486 ; *Sleeper* v. *Middleworth*, 4 Den. 431.) And these two counter presumptions are more than sufficient to overcome the very slight presumption arising from identity of names. In fact, we believe that mere identity of names has never, unless in certain peculiar cases, been considered as amounting to proof at all. (*Doe ex dem, Hanson* v. *Smith*, 1 Camp. 197 ; *Middleton* v. *Sandford*, 4 Id. 34 ; *Clevinger* v. *Hill*, 4 Bibb, 498 ; *Stokes* v. *Dawes*, 4 Mason, 268.)

III. Von Schmidt was an incompetent witness—1st. Because he had a direct interest, in the event of the suit, by reason of his relation to the daughter of Mary Jane Mott. Being entitled to the use and enjoyment of the separate estate of his wife—subject, perhaps, to reasonable compensation to her for such use—he was interested. (Act relating to Husband and Wife, Wood's Dig. 488.) 2d. As husband of such daughter, he could not testify in an action brought for her benefit. (1 Greenl. Ev. sec. 341, 497.) The deed from Patterson and wife by Von Schmidt, as attorney, conveyed the land to Mary Jane Mott "in trust for the benefit of her children." Von Schmidt's wife was directly interested in the estate conveyed to her mother, and hence in the event of the action ; and neither he nor his wife could testify.

The only answer we can conceive that may be made to this position is, that upon the trial the plaintiffs relied upon conveyances from the patentee, Johnson, through Henry E. Robinson, and not upon the deed from Patterson and wife ; but this objection is really of no force whatever.

The action of ejectment is solely a proceeding to recover possession of land, etc. It may be sustained upon any title and upon any estate, though theoretically it was formerly supposed to lie in favor of a termor alone ; but at this day, and in our State, even this theory is exploded, and now the action will lie wherever the party is entitled to the possession, without reference to how he is entitled.

Upon recovering the possession, the plaintiff is in, by virtue of whatever title he may have in the premises. Thus, if he is a termor, he is in as tenant for years ; if he has an estate tail, he is in as tenant in tail, etc. (See Adams on Ejectment—S. 327–328 ; 1 Burrows, 114 ; 4 Munford, 382 ; 13 Vt. 183 ; 3 Harington, 489 ; 3 Johns. 270.)

It is upon this principle that a number of ejectments will lie for the same land. It follows from this, that whatever judgment Mary Jane

Mott could have recovered in this action, would enure to the support and benefit of whatever title she may have had in the premises. If she claimed in her own right, she would be in of her own right; if she claimed as trustee, she would be in as trustee; and hence, as a matter of course, the persons beneficially interested in the trust were directly interested in the recovery. The result is not changed because the plaintiffs did not rely on Patterson's deed to prove title; for suppose they had (as they could have done) relied exclusively on prior possession, instead of deraigning a paper title, no one would pretend that the recovery would not enure to the benefit of whatever paper title they may have had at the time.

IV.   The nonsuit should have been granted. The deed from Robinson to the wife, expressing a moneyed consideration, and there being no proof that it was a gift to the wife, or to her separate use, the property became common property, with entire management and control in the husband. (Wood's Dig. 487, art. 2605, 488; art. 2612.) Hence, he alone ought to have sued.

V.   The Court erred in excluding the evidence offered by the defendant to prove that the *locus in quo* was not within the calls of the patent.

The patent limits the grant in one direction by " a marked oak tree at the mouth of Dry creek."

Our offer was to show that the land in controversy was below the mouth of Dry creek, and therefore not a part of the land granted.

The call was of a duplex character; that is to say, there must be, in order to conform to the patent, a marked tree, and it must stand at the mouth of Dry creek.

It is true, that there may be a mistake in the description, and the creek, at the mouth of which the tree stands, may be some other creek than Dry creek, and such an error will not probably vitiate the patent. But the plaintiffs themselves claim the mouth of the creek as a component part of the call, and do not pretend that there is any error of description.

The Court will observe that it is entirely a question of the admissibility of the evidence—not of its effect when admitted. There is no question presented as to whether the marked tree should predominate as a call over the " mouth of the creek," in the minds of the jury; but the point is, whether the jury was not entitled to know all the facts relative to the matter, and especially, whether such marked tree did

stand at the mouth of "Dry creek," and whether Dry creek was or was not above the disputed land.

*Z. Montgomery,* also for Appellant.

*R. S. Mesick,* for Respondents.

I. The patent and survey were properly admitted. (*Yount* v. *Howell,* 14 Cal. 465 ; *Waterman* v. *Smith,* 13 Id. 373 ; *Moore* v. *Wilkinson,* Id. 478.)

II. On the trial, no objection was taken to the admission of the deed from Johnson to Robinson, and therefore such objection will not be heard in this Court. But if made, the objection was not valid. (*Jackson* v. *King,* 5 Cow. 237.)

The only objections made to the admission of the deed on the trial were, " that its execution was not sufficiently proved; that neither of the persons before whom the acknowledgments purport to have been made were proved to have been the officers they represented themselves to be, and that neither of said officers had any authority to take acknowledgments of deeds."

1. This deed, being acknowledged and certified, was entitled to be read in evidence without further proof. (Wood's Dig. 103, art. 366.)

2. The person taking the acknowledgment styled himself such an officer as was authorized, namely, a "Notary Public of the Hawaiian Islands," and that was *prima facie* evidence of the fact that he was so. See 2 Phil. Ev. ed. 1859, note 479, 585 ; 4 Id. 1850, 461, and cases cited there; where it is said, "where the officer taking the same (acknowledgment) styles himself such an officer as is authorized, that will be *prima facie* evidence of the fact of his being so." (2 Greenl. Ev. sec. 298 ; *Thurman* v. *Cameron,* 24 Wend. 87 ; *St. John* v. *Croel,* 5 Hill, 574, and note ; *Livingston* v. *McDonald,* 9 Ohio, 169 ; *Session et al.* v. *Reynolds,* 7 Smedes & M. 130.)

The same may be said of the acknowledgment by the Vice Consul, if he have such authority.

3. The Notary Public whose certificate of acknowledgment is to the deed, had authority to take and certify such acknowledgments. (Wood's Dig. 100, art. 341, subdiv. 3.)

III. Von Schmidt's evidence was properly admitted.

Defendant objected to its admisssion, on two grounds of interest—one arising from his relation to the grant in his own right, the other from

his relation to the land in controversy through his wife, under the deed from Patterson and wife to Mrs. Mott.

1. As to the first ground of interest, it is sufficient to refer to his testimony given in his examination on his *voir dire*, all of which was as follows:

"I purchased land on this grant about two years ago in my own name. It was after the patent had issued."

A purchaser of land on this Johnson grant could hardly be disqualified generally from testifying in relation to all the lands covered. by it. This testimony does not show the witness in any way interested in this case.

2. As to the second ground, the answer is equally plain.

It was predicated upon a deed to Mrs. Mott from Patterson and wife by Von Schmidt, as attorney in fact. It nowhere appears that Patterson and wife, or either of them, ever had any property in this State. Their deed to Mrs. Mott stands wholly unconnected with any title, ownership or possession whatever to the property. Moreover, it was executed under a power of attorney given by them to Von Schmidt, and that power did not authorize the deed. The power only authorized Von Schmidt to sell and convey for the best price that could be procured, that is, for a money consideration. This is a deed of gift in consideration of love and affection for Mrs. Mott and her children. Hence, it was unauthorized and of no effect. It was not the deed of Patterson and wife. It created no estate whatever in Mrs. Mott. It was void. (*Dupont* v. *Wertheman*, 10 Cal. 354.)

Mrs. Mott could predicate no rights upon that deed, and no Court could aid her in the exercise of any under it. From it she derived no rights or powers. Equally from it flowed no rights to her children, and Von Schmidt, the husband of one of them, could not be interested, or made thereby incompetent to testify.

IV.   The motion for a nonsuit was properly overruled.

The ground of the motion was a want of joint seizin, or right of possession, in the plaintiffs to the land in controversy. Upon this point we say:

1. The deed from Robinson to Mrs. Mott was admitted, without objection in this respect, to sustain the title of plaintiffs. It, at least, sustained the right of the husband, and he could not be nonsuited. (*Ingraham* v. *Baldwin*, 12 Barb. 19.)

2. If the complaint did not show a right in the wife to sue—*i. e.*,

Mott *v.* Smith.

showed a misjoinder of parties plaintiff—the objection could be taken only by demurrer. If not so taken, the objection was waived. (Pr. Act, secs. 40 and 45.)

3. But grant that defendant did demur; such demurrer was over-ruled by the Court below. Defendant answered, and has not assigned such ruling on the demurrer as error, and, therefore, this Court will not review it, even though erroneous, and the case will stand in this Court as though no demurrer had been interposed, or the ruling was strictly correct.

4. As the deed from Robinson to Mrs. Mott presumptively made the land in controversy community property, and of such property "the husband and wife, during coverture, are jointly seized." So this Court held in *Beard* v. *Knox*, 5 Cal. 256; *Scott* v. *Ward*, 13 Id. 458.

And such seems to be the doctrine held in *Wright* v. *Hays*, 10 Tex. 133; 11 Id. 637.

V. The Court properly ruled out this question: "State, if you know, whether the land occupied by the defendant for the last two years or more, or any part thereof, lies below the junction of Dry creek and Bear river?"

Plaintiffs objected to this question, because, instead of its referring to the starting point or monument named in the patent, it referred to the junction of Dry creek with Bear river.

It cannot be said that the question involved was the right of the defendant to introduce evidence to show that the land was outside the patent. That right was not denied him. If the land were below the starting point, or first monument mentioned in the patent, then it was not in it; if above, then it was in it. The starting point or monument in the patent, was "an oak tree marked with a cross, (x) and with the letters and figures J. R. and S. 1 and 122, at the junction of Dry creek and Bear river," etc. Von Schmidt testified that he marked that tree, all but the cross, (x) and the land in dispute was over one mile and a half above the tree. The map shows two principal streams called Dry creek, putting into Bear river, one where this oak tree stands, *i. e.*, at the starting point, and another about two miles above. The witness Scott, who, under a special appointment by the Court for that purpose, in this suit, had surveyed the premises in dispute, not only testified, on his direct examination, that he had made such survey under the order of the Court, and knew that the lands in dispute were included in the patent, and defendant was living on them; and on his

examination by defendant, testified that he knew where Dry creek was, and where it emptied into Bear river, and that the mouth of Dry creek was below the land in controversy; but also, in his reëxamination, further testified, that "there are many streams putting into Bear river there." Now, about the position of that "oak tree" there could be no difficulty and no difference of opinion, but there might be much about the locality of Dry creek. Either of the many streams putting into Bear river there would bear the name of Dry creek, and thus the lower line of the patent be varied, as the notions of the witnesses might vary, as to which of the many streams was the Dry creek.

The question, then, which defendant insisted upon asking was in effect, whether the land was below the mouth of that which the witness called Dry creek, without regard to the "oak tree." This was but an effort, and tended to confuse the minds of the jury; and while it was not permitted to be done directly, it tended indirectly to impeach the patent, and afford to jurors a pretext for refusing to recognize the rights of the plaintiffs to the land in controversy, though above the "oak tree" and within the patent.

The Court was right in limiting defendant to this "oak tree," which was fixed and certain—the imperative call of the patent—and refusing to allow him to ignore this, and wander about upon the descriptive calls of the patent, which were changeable and uncertain. It is a well settled rule of law, that the imperative calls of a grant must be first gratified.

The junction at which the bounding tree stood was but a matter of description where to find the tree. The tree might stand more or less remote from the junction, on either side of, or even in either creek or river, and the descriptive call be answered. The point of beginning must be fixed, that there may be certainty—that the grant may not be "floating"—and hence the necessity of confining the evidence to this bounding "oak tree." (*Budd* v. *Brooke et al.*, 3 Gill, 198; *Wilson* v. *Inloes*, 6 Id. 121.)

The lands might be below the mouth of Dry creek, and not below this oak tree, and, therefore, not outside of the patent.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

On the trial of this action, the plaintiffs gave in evidence a patent of the United States for a tract of land situated in the county of Yuba,

embracing the premises in controversy, issued to one William Johnson, bearing date of the third day of August, 1857. This patent recites that, on the eighth of March, 1852, the patentee, under the provisions of the Act of Congress of March 3d, 1851, presented his petition to the Board of Land Commissioners for the confirmation of his title to the tract known as "Johnson's Rancho," containing five leagues, situated on Bear river, a tributary of the Sacramento; that his claim was founded on a Mexican grant made to Pablo Gutieras, "*in the summer of* 1844, *by Captain John A. Sutter, who, according to the records of the Board, derived his authority to grant from Governor Micheltorena, on the twenty-seventh day of December,* 1844;" that in April, 1845, the tract was sold and conveyed by Sutter, in his capacity as Judge of the "Jurisdiction of the Sacramento," to the petitioner; that in November, 1856, the case being on appeal before the United States District Court, and the Attorney General of the United States having given notice that the appeal would not be further prosecuted, and a stipulation of the District Attorney of the United States for the dismissal having been entered, a decree was rendered dismissing the appeal, and granting leave to the claimant to proceed under the decree of the Land Commission as a final decree; and that a plat and certificate of the survey of the tract thus confirmed, authenticated by the signature of the Surveyor General of the Public Lands in California, were presented to the Commissioner of the General Land Office. The plat and accompanying certificate are then set forth in full; the description of the premises commencing "at an oak tree marked with a cross, (x)" and with certain designated letters and figures "at the junction of Dry creek and Bear river," and giving the courses and the distances between the several stations in chains and links, until the entire tract is closed; and are followed by the operative words of grant on the part of the United States to the patentee. The plat incorporated into the patent bears on its margin a memorandum that it was surveyed, under the orders of the United States Surveyor General, by A. W. Von Schmidt, Deputy Surveyor, in November, 1856, and that the field notes from which it was made had been examined and approved by the United States Surveyor General for California, and were on file in his office. When the patent was offered in evidence, objection was taken to the survey it sets forth, as well as to itself—to the survey, on the ground that the Deputy Surveyor who made it was interested in the grant; and to the patent, on the ground that it rests upon a reputed Mexican grant

from one who was not authorized to issue such grant. Other grounds were stated, but they do not merit consideration. The above alone require notice. The objection based on them was overruled, and the patent admitted, and, in our opinion, very properly so. The patent itself was an answer to the objection to the survey. It was of no consequence whether the Deputy Surveyor was or was not interested in the grant at the time. It was not his action which gave character to the survey actually made; it was the approval by the Surveyor General of the United States for California, and by the proper department at Washington, which imparted to it validity, and placed it beyond the reach of attack in actions of ejectment. That approval was the judgment of the appropriate tribunal that the survey presented was in conformity with the final decree of confirmation. We are speaking now, it is to be observed, of a case arising previous to the legislation of Congress, vesting in the United States District Court a supervision over the action of the Surveyor General in the matter of surveys of lands claimed under confirmed Mexican grants. It may be true, also, according to the recent decision in the *Fossatt case*, (21 How. 445) that the jurisdiction of the United States District Court, previous to the legislation referred to, embraced all questions as to the location and boundaries of the lands confirmed, and could have been exercised to control the surveys of such lands until the issuance of the patent; but where no question was made as to the form and correctness of the survey, by proper parties, before the District Court, pending the proceedings for confirmation, the approval of the officers designated was final. Of that approval, and also of the regularity and validity of all the different proceedings required by the acts of Congress, from the filing of the petition of the claimant before the Board of Land Commissioners, to the issuance of the patent, the patent itself was, in this form of action, not only evidence, but conclusive evidence against the Government, and all parties claiming under the Government by title subsequent; much more so against parties claiming no higher title—which is the present case, so far as the record discloses—than that of mere possession.

The patent itself also furnishes an answer to the objection that it rested upon a reputed Mexican grant from one who was not authorized to issue the grant. It is only from the recitals of the patent that the character of the grant is known. From them it would appear that the grant belonged to that class which grew out of the document well known and designated through the valley of the Sacramento as "Sut-

Mott v. Smith.

ter's general title." This document bears date of the *twenty-second* day of December, 1844, and if the authority exercised were derived from it—the date given in the recitals—the *twenty-seventh* day of December is a mistake. If Sutter were clothed with any other power to issue any evidence of title, we are not informed of it, and it is not pretended by counsel that he was so clothed; but if such were the case, the fact would not affect our conclusions as to the objection taken. We shall, therefore, assume that reference was intended to that document. Besides this error of dates, there is evidently an omission in the recitals. They speak of the grant as made by Sutter in the *summer* of 1844, by authority derived from Micheltorena in *December*, 1844; that is, by authority subsequently acquired. The petition to the Governor for a grant was probably presented in the summer of 1844, and perhaps the words omitted had reference to this presentation. But it is not material in what way the inconsistency is explained. The fact that a grant was issued by Sutter, who assumed to act by authority derived from Micheltorena, appears, and this fact constitutes the point of the objection. A copy of the document mentioned will be found in the opinion of Mr. Justice Campbell, of the Supreme Court, in the case of *The United States* v. *Nye*, (21 How. 410) and is as follows:

"Manuel Micheltorena, Brigadier General of the Mexican army, Adjutant General of the *Plana Mayor*, Governor, Commandant General, and Inspector of the Department of the Californias.

"The Supreme Departmental Government being unable, in consequence of its incessant occupations, to draw up, one by one, the respective title papers (*titulos*) for those citizens who have solicited lands, with *informe* in their favor, of Mr. Augustus Sutter, Captain and Judge, charged with the jurisdiction of New Helvetia and Sacramento.

"In the name of the Mexican nation, I do, by these letters, confer upon them and their families the property of the lands designated in their respective applications (*instancias*) and maps, (*disenos*) upon all and each one who have solicited (the same) and obtained the favorable *informe* of the aforesaid Mr. Sutter, up to the day of this date, so that nobody shall have power to question their right of property—a copy hereof, which Mr. Sutter shall hereafter give them, serving them for a formal title, with which they will present themselves to this Government, in order to extend the same title in due form, and on stamped paper.

"And that it may remain firm and stable in all time, I give this

document, which shall be recognized and respected by all the authorities, civil and military, of the Mexican nation, in this and the other departments; authenticated with the military and Governmental seals, in Monterey, this twenty-second day of December, one thousand eight hundred and forty-four.

"MICHELTORENA."

This document and the titles claimed under it were the subject of consideration by the Supreme Court of the United States, in the cases of *The United States* v. *Nye,* cited above, and of *The United States* v. *Bassett* (21 How. 412). In the first case, Mr. Justice Campbell, who delivered the opinion of the Court in both cases, states that the document had no reference to the colonization laws of Mexico; that it was issued by the Governor to enable Sutter to raise a military force for his assistance against insurgent chiefs, who had determined to expel him from the country; that it had no signification except as an appeal to Sutter, and persons under Sutter's influence to come to his relief, and as a promise to them of a liberal distribution of land in case their assistance proved successful; that the issue of the war was fatal to Micheltorena, who was compelled to leave the country, and that whatever power the document conferred upon Sutter was then abrogated, if not previously. In the second case, Mr. Justice Campbell says: "The promises of Micheltorena to Sutter, and through Sutter to the foreign volunteers, did not confer a title to any part of the public domain, nor perfect any incipient pretension into a vested interest. The parties looked to the contingency of a suppression of the revolt and the maintenance of the power of the Governor for the fulfillment of these promises. In this they were disappointed." In the two cases before the Supreme Court, a certified copy of "Sutter's general title" was not delivered to the claimants until after the defeat and abdication of Micheltorena, a circumstance referred to in the opinion. In the present case, it would appear that it had been previously delivered. Whether this fact, had it existed in those cases, would have affected their determination, it is immaterial to inquire. It probably would not have had any influence. Assuming then, that, as a matter of fact, the grant was issued by Sutter without authority, the answer to the objection taken on that ground is perfect; it has been decided otherwise by the tribunals established by the United States for the express purpose of ascertaining and determining the validity of grants claimed to have been issued to individuals by authority of the Mexican Government. This particular

grant those tribunals have passed upon and pronounced valid, entitling the claimant to a recognition and confirmation of his claim thereunder. The United States have their officers to take charge of their interests, and to conduct legal proceedings on their behalf, before the tribunals of the country. The highest officer for that purpose in the Union, with supervision over proceedings in each district, is the Attorney General; the highest officer for a particular district, subject to such general supervision, is the District Attorney. Both of these officers have consented, on behalf of the United States, that the appeal from the judgment of the Land Commission affirming the validity of the grant to Gutieras shall be dismissed, and upon such consent the United States District Court has acted and dismissed the appeal then pending, and ordered that the claimant have leave to proceed upon the decree of the Commission as a final decree, and these matters also appear by the recitals of the patent. The validity of the grant is therefore the law of that case. It can never be questioned again by the Government, or by individuals claiming under the Government, either collaterally in an action of ejectment, or directly in any other form of proceeding. It is a closed question for all time.

After the patent was admitted, two deeds of conveyance were offered in evidence. One from William Johnson to Henry E. Robinson, and the other from Robinson to Mary Jane Mott, one of the plaintiffs. The only proof of the execution of the deed from Johnson consisted of two certificates of acknowledgment, attached to the deed, made at the Hawaiian Islands on the tenth of March, 1857; one by Albert B. Bates, who describes himself in the body of his certificate, as "the principal Notary Public" of the Islands, and affixes to his signature a similar designation of his official character, with his notarial seal; and the other by George A. Lathrop, who describes himself in the body of his certificate, as "the Vice Consul of the United States of America at Honolulu, Hawaiian Islands," and affixes to his signature the designation of his official character as "U. S. V. Consul," and the consular seal. Upon the offer of the deed, objection was taken to the proof of its execution on two grounds: 1. That it was not shown that the persons before whom the acknowledgments purport to have been made were the officers they represent themselves to be: 2. That neither of the officers were authorized to take the acknowledgments. The objection was overruled, and the deed admitted; and the ruling of the Court in this respect constitutes one of the errors assigned for a reversal of

the judgment. We think the ruling correct, and both grounds upon which the objection was urged untenable.

The fourth section of the Act of April 16th, 1850, concerning conveyances, specifies the officers by whom the proof or acknowledgment of any conveyance affecting real estate may be taken, and provides that when the conveyance is acknowledged or proved without the United States, it may be taken by any "Judge or Clerk of any Court of any State, Kingdom, or Empire, having a seal, *or by any Notary Public therein,* or by any Minister, Commissioner, *or Consul of the United States, appointed to reside therein."* The twenty-ninth section of the act provides that "every conveyance or other instrument, conveying or affecting real estate, which shall be acknowledged or proved and certified, as hereinafter prescribed, may, together with the certificate of acknowledgment or proof, be read in evidence without further proof." And the thirty-first section declares that "neither the certificate of the acknowledgment, nor of the proof of any such conveyance or instrument, nor the record, nor the transcript of the record of such conveyance or instrument shall be conclusive, but the same may be rebutted." The word "hereafter," in the twenty-ninth section, is evidently a misprint, or a mistake in the enrollment of the act, for "herein," as the provisions to which it refers precede the section.

It is thus clear, that if the persons designated in the certificates were in fact the officers they represent themselves to be, they were authorized to take the acknowledgments and make the certificates in question, and the certificates were sufficient *prima facie* evidence of the execution of the deed to entitle it to be read in evidence. The general designation in the statute of *any* Notary Public or *any* Consul of the United States, is sufficiently comprehensive to embrace Notaries and Consuls of every grade. It matters not whether the person exercising notarial or consular functions was principal or inferior Notary, or Consul General or Vice Consul. And the certificates were *prima facie* evidence of the official character of the persons by whom they were given. Were this otherwise, the utility of the statute would be in a great degree impaired. It would be quite as easy, in the majority of instances, to make the ordinary proof of the execution of a conveyance or other instrument, as to establish the official character of the officers. Statutes similar to our own, as to the proof and acknowledgments of deeds and other instruments executed without the jurisdiction of the United States, exist in several of the States, and the certificates

of the proof and acknowledgments are generally regarded as affording *prima facie* evidence of both the character of the officers giving them and the genuineness of their signatures. The statute of New York provides that every acknowledgment or proof of a deed or mortgage made or taken before any Consul of the United States, resident in any foreign port or country, certified by him, shall be as valid and effectual as if taken before one of the Justices of the Supreme Court of that State. (1 Revised Statutes, 747.) And in *St. John* v. *Croel*, (5 Hill, 573) two powers of attorney, purporting to have been executed by the plaintiffs—one before the United States Consul at Vienna, and the other before the United States Consul at London, and the certificates of acknowledgment of which were in the usual form, and authenticated by what purported to be the consular seal of those officers—were held sufficiently proved by the certificates alone, without any evidence *aliunde* of the signatures or seals of the officers.

In *Truman* v. *Cameron*, (24 Wend. 87) which was an action of ejectment tried in New York, a deed of the premises in controversy was produced, purporting to have been executed by the grantors in the State of Connecticut, and having a certificate of acknowledgment purporting to have been given by " David Daggett, a Judge of the Superior Court of Connecticut." To its introduction objection was taken on various grounds, and among others on the ground that " there was no evidence of the official character or of the signature of the officer whose name purported to be subscribed to it, or that the acknowledgments were taken within the jurisdiction of the Superior Court of Connecticut." The Circuit Judge ruled that the certificate was *per se* evidence of the official character and signature of the officer, and admitted the deed, and his ruling in this respect was affirmed on appeal by the Supreme Court. The principles expressed in the opinion of the Court are as applicable to the questions under consideration in the case at bar, as if the acknowledgments had been taken in a foreign country, and before a Consul of the United States. " The certificates of acknowledgment," says the Court, " were, we think, properly received in evidence. The objections to them, if allowed, would destroy almost entirely the utility of the statutes, which declare a probate or certificate of acknowledgment, indorsed by certain officers upon a deed, to be *prima facie* evidence of its execution. If their official character, their signatures, and that they acted within their territorial jurisdiction, must be shown by extrinsic evidence, the party may as well—and in general,

**36**

perhaps, with more convenience to himself—procure the common law proof. The practice is to take a certificate which appears on its face to be in conformity with the statutes, as proof of its own genuineness. It need only be produced. There is no need of extrinsic proof, such as showing by whom it was made, any more than of a Notary's certificate when received under the commercial or civil law; (Chitty on Bills, Am. ed. 1839, 642, *a ;* 2 Dom. tit. 1, sec. 1, pl. 29) or a Clerk's certified rule of the Court in which the cause is pending. (Cowen & Hill's, 1 Phil. Ev. 388.) Accordingly, where the certificate describes the proper officer, acting in the proper place, it is taken as proof both of his character and local jurisdiction. *(Rhoades, lessee,* v. *Selin,* 4 Wash. C. C. R. 718; *Willinks, lessee,* v. *Miles,* 1 Pet. C. C. R. 429 ; *Morris* v. *Wadsworth,* 17 Wend. 103, 112, 113.) He is like an officer authorized to take testimony, *de bene esse,* under various statutes. Vide *Ruggles* v. *Bucknor,* 1 Paine's C. C. R. 358, 362. Thompson, J., there said : *"Prima facie* the officer is to be presumed, *de facto* and *de jure,* such as he is described to be. Indeed, the certificate stands much on the same ground as the return to a special commission for taking testimony. There it would be deemed a singular objection, that the Commissioners must be identified, and shown to have proceeded regularly, by evidence collateral to the return."

On the argument of this case, the defendants interposed a further objection to the deed : that there was no proof to establish the identity of William Johnson of the deed with William Johnson of the patent. In the patent the residence of Johnson is not given ;—he is only referred to as claimant—as the person filing the petition before the Land Commission for confirmation of his claim under the grant to Pablo Gutieras. William Johnson of the deed describes himself as " of the island of Hawaii, Sandwich Islands;" but this is not all, as counsel seem to consider, on the face of the deed, which tends to show his identity with the patentee. After designating the property, in which the interest of the grantor is conveyed, as the tract situated in the county of Yuba, and known as " Johnson's Ranch," and giving its boundaries, the deed proceeds to state that the ranch was originally granted to Pablo Gutieras by the Mexican Government, and has since been confirmed *to the party of the first part* by the Board of Commissioners to ascertain and settle private land claims in California. This is sufficient *prima facie* evidence of the identity of Johnson of the deed with Johnson of the patent, to allow the deed to be used in evi-

Mott *v.* Smith.

dence. Before proof can be exacted of such identity, beside that furnished by the identity of names, and by reference to the source of title in the deed itself, some circumstances must be shown calculated to create doubts of such identity beyond the mere fact of a change of residence between the receipt of one conveyance and the execution of the other. In the present case, the original deed was produced in Court; the case was tried in Yuba county, where Johnson formerly lived for years, and where his signature is probably known by hundreds; and had there been anything suspicious in relation to the signature, its genuineness or forgery could have been easily established. But there is another and conclusive answer to the objection, as urged in this Court. It was not taken before the District Court. To entitle objections to consideration here, they must be presented to the Court below in the first instance; at least, if they are of a character which might have been there obviated by the production of other evidence, or the release of the interest of witnesses, or an amendment to the pleadings, or in any other way. But where they could not, under any circumstances—which is rarely the case—be obviated, they can be taken here. Thus, objections to the substantive cause of action, not to its technical form of statement, and to the jurisdiction of the Court, can be presented here for the first time—or may be considered by the Court, whether its attention be directed to them or otherwise. The objection now urged is one which might have been easily obviated in the Court below by proof of the signature to the deed, had it been there taken, and been founded upon circumstances requiring it to be noticed. (*Jackson* v. *King,* 5 Cow. 237.)

The deed from Johnson to Robinson, and from the latter to Mary Jane Mott, having been admitted, the plaintiffs called to the stand, as a witness, Von Schmidt, the Deputy Surveyor already mentioned, for the purpose of proving that the premises in controversy were embraced within the calls of the patent, and were in the occupation of the defendant; and on examination upon his *voir dire,* the witness testified that he was a married man, and that his wife was the daughter of the plaintiffs, and that he had purchased land covered by the grant, in his own name, about two years previously, after the patent had been issued. The defendant then produced to the Court a power of attorney to Von Schmidt, executed by John W. Patterson and Charlotte S. Patterson, his wife, of New York, and two conveyances, purporting to be executed under the power, to Mary Jane Mott; one from Patterson and the other

from his wife.    The power in terms authorizes the attorney to take possession of any real estate in the county of Yuba, in California, which the parties executing the same were entitled to or interested in, either severally or jointly, or in common with any other person, and to grant, bargain and sell the same, or any proportion thereof, for such sum or price, and on such terms as to him might seem meet, and to execute and deliver good and sufficient deeds of the same.    The conveyance from Patterson purports to be executed in consideration of the natural regard and affection which he has for his sister-in-law, the said Mary Jane, and is in trust for the benefit of her children.    The conveyance from Charlotte purports to be in consideration of one dollar, and the love and affection which she has for the said Mary Jane and her children.    Upon the testimony given upon his *voir dire*, and the conveyances thus produced, the defendant objected to the witness, on the ground that he was himself interested in the grant as part owner, and on the ground that his wife was interested, and, as her husband, he was in consequence disqualified.    The Court overruled the objections and admitted the witness, and the ruling in this respect we affirm.

It does not appear that the witness was in any respect connected with the premises in controversy.    We speak now of his relation to the property, independent of his position as husband of the daughter of the plaintiffs.    His ownership in other parcels covered by the grant, upon the confirmation of which the patent issued, did not disqualify him from testifying in the action.    He could not, from that circumstance alone, gain or lose by the direct legal operation and effect of the judgment, nor could the judgment be legal evidence for or against him in any other action; and this is the test prescribed in the statute, by which the interest of a witness is to be determined.    (Prac. Act, sec. 393, as amended in 1854.)

The deeds purporting to be executed by the witness, under the alleged power, were upon their face mere nullities.    A married woman cannot invest another with a power to sell any interest which she may possess in real estate, in the absence of any statute to that effect, and there is no such statute in this State.    To the efficacy of a conveyance by a married woman, it is essential that she join with her husband in its execution, and state, on a private examination at the time, separate and apart from him, and without his hearing, that she executed the same freely, without fear of him or compulsion, or under influence from him, and that she does not wish to retract its execution.    This private examin-

ation—this determination of the will as to the retraction of the execution—are not matters which can be delegated to another. Besides, the power only authorizes a sale, that is, a transfer for a valuable consideration, which was evidently intended to be a moneyed consideration. It does not authorize a conveyance from motives of love and affection. The conveyances, therefore, carry on their face the evidence of their own nullity. (*Dupont* v. *Wertheman*, 10 Cal. 355.) Again, it does not appear that Patterson or wife ever possessed or claimed any interest in any of the lands covered by the grant to Gutieras, or the patent to Johnson, or had any such land in contemplation when the power was executed. The title by which the plaintiffs claim in the present action is independent of any conveyances from them. If they ever, in fact, possessed any interest in the premises, they still retain it against any possible interference with their rights from the action of their attorney, as disclosed by the conveyances in question.

The objection to the witness having been overruled, and his testimony, as well as the testimony of other witnesses, having proved the facts for which he was called, the plaintiffs rested; and thereupon the defendant moved for a nonsuit, on the ground that the evidence had not established any joint seizin or right of possession in them, but had affirmatively established that there was no such joint seizin or right. The motion appears to have been based upon the deed from Robinson to Mary Jane Mott, one of the plaintiffs. That deed recites a moneyed consideration of one hundred dollars; and hence, the presumption of the law arises, that the premises conveyed constitute the common property of the community existing between the grantee and her husband. All property acquired by either husband or wife, after marriage, except such as is acquired by gift, bequest, devise or descent is, by the express terms of the statute, declared to be common property. (Act concerning Rights of Husband and Wife, sec. 2.) The presumption attendant upon the fact recited can only be overcome by clear and satisfactory proof that the acquisition was made with the separate funds of the wife. (*Meyer* v. *Kinzer and Wife*, 12 Cal.) No such proof was offered in the present case. The premises were to be treated, therefore, as common property, the entire management and control of which, with the absolute right of possession and disposition, were vested in the husband, and the action should have been instituted in his name alone. But the misjoinder of the wife constituted no ground for the motion to nonsuit the plaintiffs; it would have constituted good ground of demur-

Mott *v.* Smith.

rer, had the defect been apparent upon the face of the complaint, or for motion to dismiss as to the wife on the trial. Such was not, however, the motion, and no error is assigned upon the ruling on the demurrer. The refusal of the nonsuit was therefore correct.

A witness for the defense was then produced, who stated that he knew where the defendant resided; that he knew where Dry creek was, and where the creek entered Bear river; that he knew of no other Dry creek than the one he named; and did not think there was any other creek by that name between the foot-hills and the mouth of Bear river. He was then requested to state, if he knew, whether the lands occupied by the defendant for the last two years or more, or any part thereof, lay below Dry creek and Bear river, the counsel declaring that the object of the inquiry was to show that the lands were not within the calls of the patent or grant. To the inquiry, objection was taken and sustained, on the ground that it did not relate to the starting point or monument named in the patent—the Court offering at the time to allow the witness to be asked whether the lands were situated below the oak tree marked as the commencement or first monument of the patent. Other witnesses were produced to whom the same question was asked, and in a similar manner disposed of. The ruling in this respect constitutes the last error assigned for a reversal of the judgment. We are of opinion that the action of the Court in the matter was proper. The map incorporated into the patent shows that there are two streams emptying into Bear river within the calls of the patent, each of which is termed Dry creek, and that below one of them, and above the other, the premises in controversy are situated. The description in the patent commences at an oak tree, marked with a cross (x) and certain figures and letters, at the junction of Dry creek and Bear river, and the map incorporated into the patent designates the position of the oak tree the starting point—as at the mouth of the lower Dry creek. Of the position of that point from the description and map, there could be no possible doubt. If the object of the inquiry, as stated, were to show that the premises in controversy were outside of the calls of the patent, it should have been limited to that Dry creek at the junction of which the marked oak tree stands, as otherwise the answers of the witness, who stated he knew only of one creek of that name, would only have tended to confuse and mislead the jury. The witness had not even been asked whether he knew the situation or the existence of the lower creek; and if he referred to the upper creek the ques-

Boggs *v.* Hargrave.

tion was irrelevant, and his answer would have been immaterial.    The ruling of the Court was not to exclude any legitimate proof that the premises lay below the creek which the patent designated, but to require it to be directed to such creek, and not to the other creek of the same name.    It was not intended to exclude proof that the premises were not covered by the patent, but to prevent, in the making of such proof, the creation of confusion in the minds of the jury.

Judgment affirmed.