## Case No. 12,115.

### RUGGLES v. BUCKNOR.

[1 Paine, 358.] [1]

Circuit Court, S. D. New York. April Term, 1824.

CHARTER PARTY—AFFREIGHTMENT—LIEN ON PART FOR WHOLE—DEPOSITION—OFFICER TAKING.

1. One chartered the hold of a vessel for a voyage, covenanting to pay freight, the owner appointing and paying the master and crew, and fitting the vessel. A third person shipped goods, consigning them to the defendant, who, on receiving them from the master, promised to pay the freight. *Held*, that the charter party did not deprive the owner of his lien for the freight, and that the defendant became liable to the owner for the freight by his acceptance of the goods.

[Cited in Shaw v. Thompson, Case No. 12,726. Cited in brief in Raymond v. Tyson, 17 How. (58 U. S.) 60, 61.]

2. Whether the owner has a lien under any circumstances on a part of the cargo not delivered, for the freight of the whole? Quere.

[Cited in Blowers v. One Wire-Rope Cable, 19 Fed. 446.]

3. If it appear on the face of a deposition taken under the act of congress [of 1789 (1 Stat. 73)] that the officer taking the same was authorized by the act, it is sufficient in the first instance, without any proof that he was such officer.

This was an action of assumpsit for the recovery of freight. The defendant pleaded the general issue, with notice of set-off for money paid, &c. At the trial a case was made for the opinion of the court, and now argued.

On the 13th day of February, 1822, the schooner Tassel, owned by the plaintiff, then lying in the port of Charleston, S. C., Benedict Dayton, her master and agent, chartered her hold to Joseph T. Weyman to perform a voyage from Charleston to Blakely, Alabama,

and thence to New-York. By the charter party, Dayton covenanted, in consideration of the freight therein mentioned, to receive on board his vessel, from Weyman, his agents or assigns, a full cargo, and carry it to Blakely, and to deliver it on her arrival to the agents or consignees, and then to receive on board from the agents or assigns of Weyman another cargo, and carry it to New-York, and on her arrival make a true delivery of her cargo, agreeably to the bills of lading signed for the same, with the agents thereof. Weyman, on his part, covenanted to pay Dayton 1300 dollars for the voyage to Blakely and thence to New-York, without primage, and bound himself, his executors, &c. and the cargo to be laden on board, for the performance of his covenant. The cargo shipped at Charleston was to be delivered, according to the terms of the bill of lading, to Thomas Strang, or his assigns, they paying freight for the goods according to the charter party. On the voyage from Charleston to Blakely, the vessel suffered so severely from a storm, that she was obliged for safety to put into Savannah, where a protest and survey were made, and the vessel repaired, and a computation made of the general average. The cargo was delivered, on the arrival of the vessel at Blakely, to Strang, agreeably to the bills of lading. After its delivery, Strang came on board the vessel in company with James W. Goodman, who was introduced to Dayton, the master, as owner of the cargo which had been delivered at Blakely. Goodman told Dayton that it would oblige him if he would take a bill on his friend in New-York, for the general average incurred by the cargo on account of the repairs at Savannah, instead of the cash. To this request Dayton acceded, and also settled the general average with Strang, as agent for Goodman. Strang put a cargo of cotton on board for New-York, a part consigned to T. M. Ehrick, and the remainder to the defendant. By the bill of lading of that part consigned to Ehrick, it was expressed to be shipped by Strang on joint account with James W. Goodman & Co. and Ehrick, and Ehrick was to pay freight, at the rate of two cents per pound, to the defendant. The terms of the bill of lading of the other part of the cargo were, that it was shipped by Strang to the defendant, on account of James W. Goodman & Co. "the defendant paying freight for said cotton as per charter party." The bill drawn by Goodman on the defendant for the general average, amounting to 325 dollars, was presented for payment by Dayton on his arrival in New-York, but the defendant hesitated about paying it, and required the charter party and bills of lading, which were delivered to him, and remained in his possession some days previous to the delivery of the cargo. He said, "he had orders not to pay the bill, but would pay the freight when the cargo was delivered, but wished a short time to consider or get advice relative

to the bill." At the time appointed, Dayton called on him for his answer, when he paid the bill. The master was obliged, on account of the quarantine regulations, to land his cargo at a store in Brooklyn. He took receipts for it of the person with whom it was stored, and presented the defendant with the receipt for his part of the cargo, and demanded of him the freight. The defendant required the receipt for Ehrick's part, as he said he had to settle the freight with him. This was also delivered to him, and he said he would pay the freight in an hour or two. When Dayton called on him for it, he said he had received orders to deduct the amount of general average on the cargo from the freight.

The above facts, except such as are derived from the papers offered in evidence, were proved solely by a deposition of Dayton, taken pursuant to the provisions of the 30th section of the judiciary act, which was objected to by the defendant's counsel, "on the ground that the signature of the magistrate, or at least the fact that the person before whom the deposition purported to have been taken, was such magistrate as is stated in the certificate, ought to have been proved." This objection was overruled. At this stage of the evidence the defendant's counsel also moved for a nonsuit, which was refused by the court. Thomas Carpenter, a witness for the defendant, was then called, who testified, that he was a clerk of defendant, and had been requested by the latter to take notice of his conversations with Dayton. Witness' impression was, that he had heard all that passed between them, but there might have been interviews at which he was not present, as he sat in a front and defendant in a back room. He had heard defendant promise to pay the freight, deducting the amount of the bill of exchange, but had never heard him promise to pay it without such deduction. He stated that this promise was made after the vessel was discharged. He also proved that Ehrick had paid the stipulated freight of his consignment to the defendant, who had credited Goodman & Co. with it, and that they and Weyman acted together in the business. The single fact, whether the defendant did make such express promise to pay the freight as is above stated, was submitted to the jury, who found that it was made, and also, by consent of parties, found a verdict of 1,374 dollars 8 cents for the plaintiff, subject to the opinion of the court, and to be reduced by deducting the sum paid for general average with interest: or general judgment to be entered for defendant or judgment of nonsuit, as the court might direct.

H. D. Sedgwick, for plaintiff, cited the following cases, as to freight under a charter party. 2 Show. 443; 13 East, 399; Id. 565; 3 Taunt. 307; 1 Maule & S. 157, 573; Cowp. 143; Lawes. Chart. Party, 229; 3 Maule & S. 303; 4 Maule & S. 288; 7 Taunt. 84; 8 Taunt. 280; 2 Barn. & Ald. 510; 3 East, 384; 2 East, 460; 2 Brod. & B. 414; 18 Johns. 157; 5 Johns. 335.

D. S. Jones, for defendant, contended, 1. That the deposition of Dayton ought to have been rejected, and the plaintiff nonsuited. 2. That the plaintiff's remedy was against the charterer; at any rate that he was entitled to recover against the defendant the freight only from Blakely to New-York, and no evidence was offered how much that was. 3. That the defendant was entitled to a deduction of the general average, having paid it under a mistake.

THOMPSON, Circuit Justice. The ground of the objection to the admission of the deposition of Benedict Dayton in evidence, is so imperfectly stated in the case, that it is difficult to discover upon what it is founded. It is to be presumed that the deposition was taken pursuant to the provisions of the 30th section of the judiciary act (24th September. 1789); but when, or before whom, is not stated. The objection would seem to be that no proof was made upon the trial, that the officer before whom the deposition was taken, was such officer as he described himself to be in the certificate given by him of the taking of the deposition. If this be the extent of the objection, it was properly overruled. Prima facie, the officer is to be presumed, de facto, and de jure, such as he, by his official act, describes himself to be. This is according to universal practice, in taking depositions authorized by statute, unless the statute under which the deposition is taken requires, and points out the evidence that shall accompany the act, showing its authority. The act of congress requires no such authentication; and if, upon the face of the certificate, it appears that the person before whom the deposition was taken, was an officer authorized by the act of congress to take the same, it was all that could be required in the first instance.

This preliminary objection being disposed of, the real and only question in the case is, as to the liability of the defendant for the freight claimed of him in this cause. The difficulty in the case grows out of the circumstance that the vessel which was owned by the plaintiffs was under a charter party to Joseph T. Weyman; and it is contended, on the part of the defendant, that the plaintiff must look to his charter party for his freight. and has no lien upon the cargo for it. It is not disputed that by the general rules of law, growing out of the usage of trade. the cargo is liable for the freight, and that the master is not bound to part with the cargo until the freight is paid; but it is said this rule does not apply when the shipowner has chartered his vessel—that he thereby relinquishes his lien on the cargo, and must have recourse to his charter party. It was pressed upon me by the defendant's counsel that I should decide this abstract question, and lay down

some general rules as to the lien on the cargo for the freight, when the voyage is performed under a charter party. This I do not feel disposed to do, especially as it would, and ought to be considered as a mere obiter opinion, if not required by the facts in the case; and indeed it is impracticable to lay down any general rules to meet the great variety of cases that must necessarily arise in commercial transactions. Each case must depend in a great measure upon its own circumstances. Parties are not bound to any fixed and precise stipulations to be embraced in a charter party. They can insert any covenants they please, to answer the end, and effect the object they have in view. There can be no doubt that a shipowner may, by express stipulations as to payment of freight, incompatible with a claim upon the cargo for the same, be deemed to have waived his lien, as if he should by charter party, or otherwise, agree to receive his freight at a time and place, having no reference to the delivery of the cargo, or at variance with such time and place. But, as by the general rules of law, the cargo is liable for the freight, it should be satisfactorily shown that the claim has been relinquished before the shipowner can be required to part with the cargo, without payment of the freight. And even upon the general question, I can discover nothing in this charter party warranting the conclusion, that the claim upon the cargo for the freight, was intended to be relinquished. The charter party is of the hold of the vessel only from Charleston in South Carolina, to Blakely in Alabama, and thence to New-York, for which round voyage the sum of thirteen hundred dollars was to be paid. No apportionment of the freight is stipulated on the voyage from Charleston to Blakely, or from thence to New-York, or any time fixed for the payment. The conclusion of law upon this charter party probably would be, that no part of the freight was payable until the termination of the voyage at New-York; but there is, certainly, no express, nor do I think, any implied relinquishment of the claim on the cargo for the freight. A part of the vessel was retained for the benefit of the owner, or at least no part but the hold was embraced in the charter party. The management of the vessel continued under the master and crew appointed by the owner, and was sailed at his expense. He must, therefore, be considered as retaining the possession, command, and navigation of the schooner; and the charter party is a mere contract to carry a cargo on freight for the voyage therein described.

But, independent of this general view of the subject, the present case furnishes abundant evidence to show that the defendant is responsible to the extent of the finding by the jury. He was the consignee of a part of the cargo shipped at Blakely for New-York; and by the bill of lading it was expressly

provided that such cargo was to be delivered to him, he paying freight for the same, as per charter party. Upon the trial it was submitted to the jury, as a question of fact, whether the defendant had expressly promised to pay the freight; and the jury found that he did make such promise; and this finding was fully justified by the evidence in the cause. The captain swears, that on his arrival at New-York, he, at the request of the defendant, delivered to him the charter party and bill of lading, which he kept in his possession several days previous to the delivery of the cargo; and then promised to pay the charter party when the cargo was delivered. The quarantine regulations at New-York required that the cargo, (consisting of cotton,) should be delivered at Brooklyn, which was accordingly done, and the receipt for the same presented to the defendant, and the freight demanded. The defendant then required the receipt for another part of the cargo which had been consigned to John M. Ehrick, as he had to settle the freight for the same with him. This receipt was also delivered to defendant, and he reiterated his promise to pay the freight, and named some few hours thereafter for the purpose; but on the captain's calling for payment, the defendant refused, unless the amount of the general average was deducted, which the captain declined doing, and no payment was made. Some attempt was made to throw a doubt upon this testimony, by an examination of a clerk of the defendant's, who swore he was present at several conversations between the defendant and the captain on this subject, and he understood the defendant to promise to pay the freight if the general average was deducted. He however admitted, that there might have been conversations between the parties which he did not hear. His testimony was, therefore, at best, but of the negative kind, And the credibility of Captain Dayton was a question proper for the determination of the jury; and their finding establishes the promise, according to his testimony. It was argued, however, that admitting the promise to have been made, it was void for want of consideration. This objection is without foundation. The delivery to, and acceptance of the cargo by the defendant, being the consignee in the bill of lading, was a consideration abundantly sufficient to support the promise. This promise of the defendant having extended to the full amount of the freight, according to the charter party, renders it unnecessary to inquire whether the shipowner would have a lien upon this part of the cargo for the whole freight, or only for its proportion. Whatever might be the rule of law upon that subject, in the absence of any stipulation in relation to it, it is very evident in this case, that it was the understanding of all parties that the defendant was to pay the whole freight. This was according to the terms of the consignment to

him in the bill of lading; and no other rule is given in the bill of lading by which to calculate the amount of freight upon this part of the cargo. But by the bill of lading for the residue of the cargo consigned to J. M. Ehrick, two cents per pound for the cotton is stipulated as the freight, and to be paid to the defendant, which. was accordingly done as appears by the evidence in the case. All the circumstances, therefore, concur to show, that it was the understanding of the parties that the whole freight reserved in the charter party was to be paid by the defendant. And no injury whatever is done him, as he is amply indemnified by the part of the cargo consigned to him.

The only remaining question is, whether the amount paid for general average ought to be deducted from the verdict. This general average grew out of an injury received by the vessel on the voyage from Charleston to Blakely, by reason whereof the captain was obliged to put into Savannah, where a regular survey was held, tne repairs made, and the general average stated by a notary, at the request of the master. On the arrival of the vessel at Blakely, a Mr. Goodman, who was introduced to the captain as owner of the cargo, represented to him, that it was not convenient for him to pay the amount of the general average, and requested him to take a draft on the defendant for the same, which he accordingly did. No objection whatever appears to have been made to the correctness of the claim for general average. The captain, on his arrival at New-York, presented the draft to the defendant, and received for answer, that he had received orders not to pay it, but wished a short time to consider or get advice relative to the draft, to which the captain assented; and at the time appointed he called on the defendant, when he accepted and paid the draft. Under these circumstances, this can be viewed in no other light than as a voluntary payment, with full knowledge of all the facts. It is not pretended but that something was due on account of the general average, from the owners of the cargo on board, at the time the injury was received. The objection goes only to the amount; and whether even this is well founded, does not very satisfactorily appear from the case; at all events, it is too late as to the defendant to open the account. Nor can he have any cause of complaint. He has only paid the draft of him who assumed to be responsible for the general average; and this payment made too, after time taken for consideration and advice on the subject. And it is perhaps fairly to be inferred from the case, that in so doing he acted under the special instructions of the drawer of the bill. For when the bill was first presented to him, he said he had received orders not to pay it; but some few days after he accepted and paid the bill. The cause of this change of determination is not disclosed. But as the

defendant professed to act under instructions from some quarter, it is reasonable to conclude they proceeded directly or indirectly from the drawer of the bill, so as to give to the payment his sanction. But whether this be so or not, the defendant is concluded by his voluntary payment, and is not entitled to any deduction from the verdict on this account. I am accordingly of opinion that the plaintiff is entitled to judgment upon the verdict as found by the jury.