Sargent *v.* Collins.

H. E. SARGENT, Appellant, *v.* S. W. COLLINS et al.,
Respondents.

A party can only be bound on a note executed in a firm name who is actually a member of the firm executing the same, or has held himself out as a member so as to give the firm credit on his responsibility.

The fact that C. & S. entered into a written contract with F. & P. to excavate a certain tunnel, is not conclusive evidence that S. was a member of the association known as C. & Co., who did actually prosecute the work on the tunnel. C. & Co. may have been subcontractors under C. & S.

Where the parties to a suit agree that a deposition may be taken at a certain place, during a certain month, before T., a notary public in another State, the deposition certified by T., made under his official seal as a notary, may be read by either party without other proof that T. was a notary when the deposition was taken. The seal is *prima facie* evidence of his official character.

When C. & S. contracted with F. & P. by written contract to run a certain tunnel, it was not contradicting the writing to show in a controversy with an employer of C. & Co. that C., in conjunction with G., M. & P., partners, doing business under the firm name of C. & Co., did actually prosecute the work, and that S. had no concern or participation therein.

Per Johnson, J., *dissenting.*—When parties to a suit agree that the deposition of a witness may be taken at a certain place (out of the State) on the day of a certain month, before F. J. T., a notary public, the deposition cannot be read without proof, (beyond his own certificate) that F. J. T. was a notary when the deposition was taken. His seal in such case is not evidence of his official character.

If the agreement admits T. was a notary when entered into, it does not admit that he would continue to be a notary until the taking of the deposition.

Although parties may agree that a private individual may take depositions, still, if they consent that a certain person holding office may as such officer take a deposition, it cannot be held that they consented he might take it as a private individual.

Appeal from the District Court of the Fourth Judicial District, County of Lyon, Hon. Wm. Haydon, presiding.

*Wells & Kennedy*, for Appellant, made the following assignment of errors:

1st. The Court erred in overruling plaintiff's demurrer to defendant N. P. Sheldon's answer.

2d. The Court erred in allowing the deposition of S. W. Collins to be read as evidence on the trial of said cause.

3d. The Court erred in permitting the defendant Sheldon to testify that he was not a member of the firm of Collins & Co., such evidence tending to vary, contradict and destroy his own written contract in evidence herein.

4th. The Court erred in overruling plaintiff's motion for a new trial.

*Robert M. Clarke & W. M. Gates*, for Respondents.

S. W. Collins & Co. is alleged in the complaint to consist of Collins, Sheldon, Gross, Martin, Breed and Chase. The only issue in the case is: Was N. P. Sheldon a member of that firm, or did he hold himself out to the plaintiff as such?

The record, under the most favorable view for the appellant, shows a conflict as to whether he was or not a partner. There being a conflict of evidence, this Court will not reverse the case.

The record does not even show it contains all the evidence on this point, therefore this Court cannot reverse the case.    (See *State* v. *Bonds*, 2 Nev. 265.)

The weight of evidence shows he never held himself out as a partner.

The fact that Collins & Sheldon entered into a contract with Fitch & Peck to run a tunnel, is not conclusive evidence that Sheldon was a partner with Collins, Gross, Breed and Chase in hiring laborers and excavating the tunnel. Nor is there any rule of law which would prevent Sheldon, when sued with Collins, Gross, Breed and Chase on a contract made in the name of S. W. Collins & Co., from showing he was not a member of that firm, although Collins & Sheldon may have contracted at one time to do the work which was subsequently executed by S. W. Collins & Co. The fact that Collins & Sheldon once entered into a contract with Fitch & Peck, does not prove that subsequently Collins, Sheldon and three others entered into a contract with Sargent, the plaintiff in this action Nor is there any rule of law precluding Sheldon from proving he did not enter into the latter contract because he had entered into the former. Sheldon may at a date subsequent to his contract with Fitch & Peck have turned over the whole contract to Collins. In such case, whilst still responsible to Fitch & Peck, he would not

be liable for services of persons employed by Collins himself, or he and other associates taken into the operation.

Even if there was a partnership between Collins and Sheldon, it was for mining purposes, and Collins could not bind Sheldon by note. (*Skillman* v. *Lachman*, 33 Cal. 198.)

The facts of the case appear sufficiently in the opinions of the Court and the statement of counsel.

Opinion by LEWIS, J., BEATTY, C. J., concurring.

The plaintiff brings this action against the defendants Sheldon, S. W. Collins and four others, to recover the sum of fourteen hundred and thirty-eight dollars alleged to be due on a certain promissory note signed " S. W. Collins & Co.," and bearing date May 23d, A.D. 1864. It is alleged in the complaint that the defendants were partners, doing business under the firm name and style of S. W. Collins & Co., and that whilst so doing business they executed and delivered to the plaintiff the promissory note sued on. The summons was served only on Sheldon, and he alone answers the complaint. He denies that he was ever a member of the firm of Collins & Co., that he executed the note sued on, or that he is in any way liable upon it. To the answer, which fully and completely put in issue the liability of Sheldon, the plaintiff interposed a general demurrer, which was very properly overruled by the Court below, and the case proceeded to trial upon the complaint and answer. To establish the partnership between Sheldon and the other defendants, the plaintiff introduced in evidence two written contracts, entered into on the twentieth day of May, A.D. 1861, between Henry S. Fitch and A. Peck, parties of the first part, and S. W. Collins and N. P. Sheldon, parties of the second part, by which, in consideration of some mining ground to be conveyed to them, Sheldon & Collins agreed to run or construct a tunnel for the purpose of prospecting certain mining ground owned by the parties of the first part. Besides these contracts, the only testimony which appears to have been introduced by the plaintiff is related in the record as follows :

" Henry S. Fitch testified that Collins & Co. commenced work

on the mines about ten days after the contracts were signed, and continued such work more or less until 1864 or 1865. Plaintiff was employed by Collins & Co. in A.D. 1862 to work on the tunnel, and plaintiff's wife was also employed in cooking for the hands at work for Collins & Co. Saw defendant Sheldon at the work about three times in the fall of 1863; never heard him give orders about the work."

Plaintiff Sargent: "I worked for Sheldon & Collins; Sheldon told me to get a stove at Kelley, Mott & Co.'s, which I did; Sheldon said that Collins would do all the business, and that whatever Collins did, he (Sheldon) would agree to."

A. L. Collins: "I was foreman of the mine, and saw the contract in Sheldon's office the day it was executed; Collins, Gross and Martin gave me orders about the work; Sheldon never gave me orders."

Bartholomew Canty: "I worked at the mine in May, 1861; Sheldon paid me four or five dollars for work done on the mine; saw Sheldon at the mine once or twice; he never gave me orders; Collins did."

This appears to be all the evidence introduced by the plaintiff with respect to the partnership or the liability of the defendant Sheldon.

For the defense, Sheldon himself testifies that he was not a member of the firm of Collins & Co.; that he informed the plaintiff at the time he commenced work for Collins & Co. that he would not be responsible for any debts contracted by that firm; that he gave Canty the four dollars alluded to as a matter of accommodation, and not to pay for work on the mine; so with respect to the order given to the plaintiff for the stove.

S. W. Collins testified that the firm of Collins & Co. consisted of E. S. Gross, Minor S. Martin, Philip Richardson and himself; that Sheldon was not a member of the firm, and that he was in no way liable or responsible for its debts or the promissory note sued on; that he, Collins, signed the note on behalf of the firm of Collins & Co. This is the case as made out by the evidence presented to this Court. The testimony is very meagre and probably very incompletely reported; but we can only act upon what is before us, and

there appears to be nothing in the record to justify a reversal of the judgment. To make the defendant Sheldon liable on this note, it was indispensably necessary to prove either that he was in fact a member of the firm of Collins & Co., or that he induced others to believe he was a partner, thereby giving credit to the firm and inducing third persons to deal with it accordingly.

If he were in fact a partner, and the copartnership were created for a purpose which would make it proper for each member of the firm to bind it by the execution of a promissory note, there would be no doubt of his liability in this action.

Whether Sheldon was a member of the firm, or whether he held himself out as such to the public, are facts not by any means established by the evidence as it is brought before us.

It is claimed by counsel for the appellant, that the contracts between Peck & Fitch and Sheldon & Collins, already referred to, created a partnership between the last two persons. They are doubtless joint contractors; but the contracts do not certainly develop a single feature of partnership between them. A partnership is defined to be a contract between two or more persons, by which they join in common either their whole substance or a part of it, or unite in carrying on some commerce or some work or some other business, that they may share among them all the profit or loss which they may have by the joint stock they have put into partnership. Do the contracts referred to show any engagement between Collins and Sheldon by which they mutually bound themselves to run the tunnel for Peck & Fitch, jointly sharing the profit and loss? Certainly not. Though Collins and Sheldon contract jointly with Peck & Fitch to do certain work, that creates no contract between Collins and Sheldon by which they are mutually bound to each other to do such work on their joint contract. Notwithstanding the contract, each might do his own proportion of the work himself, furnish his own implements, or tools, and pay his own expenses, or might employ others to do his proportion of the work at his own expense. In such case there would be no such mutual obligations, liabilities or interest between them as to create a partnership. To create a partnership, there must be a contract, either expressed or implied, between the parties composing it, by which

they join in some common enterprise, and share among each other the profit or loss.  The mere fact of their joining in the contracts between themselves and Peck & Fitch, no more created a partnership between them than the joint execution of a promissory note would create such relation.  But should a partnership between Sheldon and Collins be conceded as having been created by the contracts, the plaintiff's case would not be strengthened in the slightest degree, because it is incontestably established that Collins & Co. was another partnership entirely, composed of S. W. Collins, E. S. Gross, Minor S. Martin, and Philip Richardson—not one of whom, except Collins, is mentioned in the contracts with Peck & Fitch— and there is not a word of evidence in the record tending to prove that Sheldon ever entered into a contract of partnership with these parties ; but on the contrary, S. W. Collins swears directly that he was not a member of the firm of Collins & Co., and so he swears himself.  If, therefore, it be admitted that the contracts for running the tunnel created a partnership between Collins and Sheldon, it will not certainly be claimed that it also made Sheldon a partner with three other persons not mentioned in those contracts.  It appears that Collins & Co. were engaged in prosecuting the work which Sheldon and Collins had contracted to perform, but Collins & Co. may have been employed by Sheldon and Collins as subcontractors to run the tunnel, and indeed such seems to have been the fact.  Sheldon not being in fact a member of that firm which executed the note sued on, is not liable on its contracts, unless he held himself out to the public as a member, and thereby induced third persons to deal with it.  That he did so is not by any means established by the evidence.  The payment of four dollars to Canty, the order for a stove given to the plaintiff, and the remark which the plaintiff says was made to him, *i. e.*, that Collins would do all the business and he (Sheldon) would agree to what was so done, are the only facts in the whole record tending to establish anything of the kind.  They may tend to show that Sheldon held himself out as a partner in the firm of Collins & Co. ; but he, in his testimony, denies having told the plaintiff that he would be responsible for what Collins did.  On the contrary, he swears that he told plaintiff he had no interest in the mine, and would not be responsible for

the debts of Collins & Co. The plaintiff's evidence, even uncontradicted, would hardly be sufficient to establish Sheldon's liability on the note; much less when explained away and contradicted by defendant Sheldon, in his testimony. In view of the weakness of the plaintiff's case, as made out by the evidence and the conflict in the testimony, this Court cannot reverse the order of the lower Court refusing a new trial.

In the bill of exceptions presented to this Court, the appellant complains of two rulings made by the Court below during the progress of the trial, and assigns them as error, each of which will be adverted to in their regular order. And first, it is claimed that the Court erred in allowing the defendant to read the deposition of S. W. Collins, counsel giving as a reason why it should not be placed in evidence that it was not taken by any person having the authority to take depositions. It seems, the deposition was taken in accordance with the following stipulation entered into between the counsel for the respective parties:

" It is hereby stipulated and agreed by and between the parties, plaintiff and defendants in this action, that the deposition of the defendant, S. W. Collins, be taken at the City of San Francisco, State of California, before F. J. Thibault, Notary Public, on the          day of November, A.D. 1866, and hereby waive all preliminary notice, commission and other forms. The deposition to be used by either party on the trial."

F. J. Thibault, over his signature and official seal, certifies that the witness appeared before him in his office in San Francisco, on the eighth day of November, and made answers to the interrogatories propounded by the attorneys for the respective parties, which answers were properly returned to the Court where the action was pending.

The objection would have possessed more merit if counsel had not in the stipulation acknowledged Thibault to be a Notary Public, and had not agreed that he should take the deposition.

Were it not for the stipulation, plaintiff's counsel might perhaps have required further proofs of Thibault's authority to take the deposition, but the acknowledgment of his official character in the stipulation, and the agreement that the deposition should be taken

Sargent *v.* Collins.

before him, rendered any further proof of his authority unnecessary. It is not denied by counsel that it was taken by the very person agreed upon.   Hence, to require further proof of his authority or official character would be superfluous; and indeed, the stipulation would effectually estop the parties to it from denying such authority. Even if Thibault were not a Notary Public, or an officer usually authorized to take depositions, yet the parties, having agreed that he should do so, should not be permitted to come into Court and at the last moment interpose the objection that he had no authority to do the act which the parties agreed he should do.   Their stipulation is all the authority necessary in such a case; the deposition was therefore properly admitted.

How the proof that Sheldon was not a member of the firm of Collins & Co. tended to contradict or vary the written contracts between Fitch & Peck and Collins and Sheldon, it is impossible to understand.   Those contracts certainly, do not mention the firm of Collins & Co., and there is not a syllable in them tending to show that Sheldon was a member of that copartnership.   To prove that he was not would not then, it seems, vary or contradict the written instruments.   This objection to the testimony of S. W. Collins was also utterly untenable.

Judgment affirmed.

Dissenting opinion by JOHNSON, J.

The foregoing opinion expresses my views of the law of this case, except in regard to the admission of Collins' deposition as evidence. Opposed to the views of a majority of the Court on this point, I think that the Court below should have excluded the deposition on one of the grounds of objection interposed by plaintiff's counsel: " That the official character which Thibault represented in taking the deposition was not properly authenticated."   The recitals contained in his own certificate, the name and notarial seal appended to the deposition, is, as I conceive, the only evidence we have that he was by proper authority acting as a Notary Public when he performed this service.   These of themselves were clearly insufficient for such a purpose; and unless it be, as claimed by respondent's counsel, and held by the other members of the Court, that the stip-

ulation between the counsel dispenses with the necessity of such proof, or that such stipulation affords presumptive evidence that he was such Notary at the time stated, there can be no pretense of justification in allowing the deposition to be used as evidence. Therefore, the only question to be determined is the legal effect of the stipulation.

Let us first examine the statutory provisions bearing upon this matter. I shall refer only to such portions of the chapter as more directly affect this question.

Chapter VI, Laws of 1861, page 380, defines the authority and mode to be pursued in the taking of depositions without the State and to be used in our Courts.

Sec. 380 provides: " That such deposition shall be taken upon a commission issued from the Court under its seal, upon an order of the Court or Judge, upon five days' notice." The commission shall be issued to a person agreed upon by the parties ; or, if they do not agree, it shall be issued to any *Judge or Justice of the Peace* selected by the officer granting the same, or to a *Commissioner of Deeds* appointed by the Governor."

Sec. 381 provides the manner of preparing and settling interrogatories, and " that the interrogatories shall be annexed to the commission;" also, " by agreement of parties the examination of witnesses may be had without interrogatories."

Sec. 282. " The commission shall authorize the commissioner to administer an oath, and to take his deposition in answer to the Court." In this instance a commission did not issue, but no objection to the deposition was made on this specific ground ; and therefore I shall not consider at this time the effect of the omission, except so far as it may be necessarily involved in passing upon the question contained in this stipulation of counsel.

The stipulation reads as follows:

" It is hereby stipulated and agreed by and between the parties, plaintiff and defendants in this action, that the deposition of defendant S. W. Collins be taken at the City of San Francisco, in the State of California, before F. J. Thibault, Notary Public, on the — day of November, 1866, waiving hereby all preliminary notice, commission, and other forms. This deposition to be used by either party on said trial."

Sargent *v.* Collins.

Now, in considering the effect, meaning, and scope of this stipulation, we must not depart from certain well-defined and established rules applicable in such case. The mode of taking testimony by deposition is in derogation of the common law, and statutes which authorize such a proceeding and prescribe rules governing it must be strictly construed; and with equal strictness must be interpreted any agreement of parties which waives or varies any of these statutory requisites.

What then is the legal effect of this stipulation? First: it is agreed that the deposition, no day certain being named, may be taken in San Francisco, California, on *any* day in the month of November, 1866; and second, that although our statutes do not of themselves authorize a foreign notary to take a deposition, yet in this case the parties consent that F. J. Thibault, Notary Public, may perform this service. Furthermore, the parties *waive* certain acts which otherwise would be essential to the validity of the deposition. These are: first, the five days' notice of application for the commission; second, the issuance of the commission, including necessarily every matter proper to be inserted in such commission; and third, the form of the interrogatories. Certain it is that plaintiff's counsel have not expressly or directly consented that such deposition may be used on the trial without proper proof showing that Thibault was duly acting as a Notary when such deposition was taken.

Nor, as I interpret the agreement of the parties, is there any legal presumption fairly deducible from the instrument that, on the eighth of November, 1866, Thibault was authorized to act in any such official capacity.

The learned Judge of the Court below rests his decision of this point on these grounds: " By the stipulation of the parties to take the deposition of Collins ' before F. J. Thibault, Notary Public,' they are estopped from denying that Thibault was a Notary Public." "According to a strict construction of the stipulation, ' F. J. Thibault, Notary Public,' is merely *descriptio personæ*, and it is immaterial whether he was a Notary or not, so he was the party described in the stipulation, and so signed himself." " Parties can stipulate to take depositions before whomsoever they please, and it makes no

difference whether they are authorized or not." And the same learned Judge thinks " that the objection might have had some weight if the stipulation was that the deposition should be taken before *any Notary Public in and for the City and County of San Francisco*," but concludes " that in such case it would be doubtful, as it is agreed by the stipulation that the deposition should *be used by either* party on the trial ;" and I infer that these are the only grounds upon which respondents' counsel rely in support of the ruling of the Court below on this point, as their briefs upon which they submitted the appeal are silent respecting it.

In the first place, the learned Judge holds " that by the stipulation the plaintiff is estopped from denying that Thibault was a Notary Public," and this, of course, must refer to the *time* when the deposition was taken, to wit : the eighth of November, 1866—the stipulation being entered into on the third of the same month.

Allow that the parties did admit the official character of the person named, on the third of November ; why are they estopped from denying, or rather from compelling, the adverse party to show such official character on the following eighth of the month ? No expressed words contained in the stipulation have dispensed with this proof, nor can any legal intendment be in favor of an admission that such official relation continues for an unlimited or indefinite time. Any rule of construction governing an agreement of the parties, in respect to the official character of a commissioner authorized to take depositions, would equally apply to a regular commission issued by judicial order ; and if the rule invoked by the learned Judge be correct, it must follow that in no case would the acts of the officer named in such commission require authentication, beyond his own signature, certificate and seal : a construction utterly opposed to the universal practice of Courts, except where the statute, as it does not in this State, makes the certificate and seal a sufficient authentication. The Judge further says : " According to a strict construction of the stipulation, ' F. J. Thibault, Notary Public,' is merely *descriptio personæ*, and it is immaterial whether he was a Notary or not, as he was the party described in the stipulation, and so signed himself." " Parties can stipulate to take depositions before whomsoever they please, and it makes no difference whether

they are authorized to administer oaths or not." From this, it would seem he holds this to be an agreement that Thibault may perform this service as a private individual and not as a Notary Public. As I look upon this matter, such an interpretation is not warranted, either by strict construction or the most extended sense in which it can be regarded. It is unquestionably true that a private individual may, by consent of parties, take a deposition beyond the State ; but such authority is derived from the express agreement of parties to the action. But when the authority is devolved upon a certain named person as an *officer*, and no express authority given him as an *individual*, assuredly he cannot for the time being lay aside his official character, and legal effect be given to his acts when performed by him as a private person. Such an act must be held as wholly unauthorized ; nor could the act be considered differently in a case where, at the time the stipulation was made, the person named was exercising the duties of a particular office, but when the deposition was taken his authority as an officer had terminated. Hence it is that the fact, if disputed, must be shown ; that he was properly acting in the capacity he represents at the time the act is done. For this purpose, as already stated, his own certificate and seal is not sufficient.

There seems, in the opinion of the Court below, some stress laid on that clause in the stipulation which provides " that the deposition should be used by either party on the trial." The learned Judge evidently overlooked this fact, that it was not the *uses* which might be made of a deposition taken in accordance with the stipulation, but the point controverted was that, in fact, there was no deposition which could be received as evidence in the case. This was the preliminary matter to be determined ; and the functions which it was to perform, if any, depended wholly on the fact as to whether it could be at all considered as evidence in the case.

The evidence contained in the deposition of Collins is strongly in support of the defense set up in the answer, and undoubtedly this evidence exercised great, if not a controlling influence, in determining the finding of facts.

Under these circumstances, and for the reasons expressed in this opinion, I conclude that the Court below erred in disallowing plain-

tiff's motion for a new trial on the one ground herein stated, and therefore dissent from the judgment of my associates.

Opinion by LEWIS, J., BEATTY, C. J., concurring, on petition for rehearing.

If the truth of the geometrical axiom, that "things which are equal to the same thing are also equal to each other," should be denied, no line of argument could perhaps be pursued which would more closely establish it than the simple statement of the fact. So, upon the question of partnership in this case, that no agreement between Collins and Sheldon and Peck and Fitch could impose the duties, liabilities, and responsibilities of a partnership upon Gross, Martin, and Richardson, who were utter strangers to such agreement, is almost a self-evident proposition. We will therefore leave that question with the consideration which was given to it in the original opinion of this Court.

Upon the second point made by counsel for appellant, we are equally well satisfied, not only that the conclusion arrived at by the majority of the Court is correct, but that it is also supported by an unbroken current of authorities, and the uniform practice of the Courts.

Counsel complain that the majority of the Court misconstrued the stipulation under which the deposition of Collins was taken, and claim that they did not admit Thibault to be a Notary Public, even at the time the stipulation was entered into, much less that he was so at the time the deposition was taken. To us, nothing seems clearer than that such admission is made by the stipulation.

But it is a matter of no consequence, so far as this case is concerned, whether such construction be placed upon it or not, for the certificate under the notarial seal is *prima facie* evidence of Thibault's official character, and further proof of that fact could only be required after such evidence was overcome by rebutting testimony.

It does not appear that appellant even attempted to prove that Thibault was not a Notary, but simply objected to the introduction of the deposition.

The certificate of an officer or commissioner taking a deposition

is uniformly received by all Courts as *prima facie* evidence of his official character.  No rule of law is perhaps more familiar to the profession, or more frequently recognized by the Courts.  In answer, therefore, to the assertion that to receive it as evidence of the commissioner's official character " would be opposed to the universal practice of the Courts," we simply refer to a few cases where without the authority of statute the certificate was so received. (*Dean* v. *Taggert,* 1 A. K. Marshall, 172 ; *Clements* v. *Durgin,* 5 Maine, 9 ; *Bullen* v. *Arnold,* 31 Maine, 583 ; *Nesse* v. *Smith,* 2. C. C. C. R. 31 ; *Price* v. *Morris,* 5 McLean, 4 ; *Patapsco Ins. Co.* v. *Southgate,* 5 Peters, 604 ; *Fowler* v. *Merrill,* 11 Howard, 375 ; *Ruggles* v. *Buckner,* 1 Paine, 358.  See also 1 Greenleaf on Evidence, Sec. 323 ; 1 Hill, 249.)

The seal of a Notary Public, says Mr. Greenleaf, " is also judicially taken notice of by the Courts, he being an officer recognized by the whole commercial world."  (Greenleaf, Sec. 5.)  The seal of the Notary is evidence of his official character.  (Chitty on Bills, 655.  See also *Mott* v. *Smith,* 16 Cal. 533, and cases there cited ; *Brown* v. *Philadelphia Bank,* 6 Sergeant & Rawle, 484.)  This is an universally recognized rule, when the Notary acts within the sphere generally assigned to him by the law.  In this case the authority to take the deposition is given by the stipulation of the parties, and *quoad hoc* such stipulation answers all the purposes of a statute giving the same authority.

Rehearing denied.

Dissenting opinion of JOHNSON, J.

No additional points are presented by appellant's counsel in their petition for a rehearing in this case, and after a reëxamination of the questions to be reviewed, I can discover no sufficient reason why I should not adhere to the views expressed by me in the former dissenting opinion, so far as they may apply to this appeal.

The point wherein I differ with the majority of the Court is now especially contained in that portion of the dissenting opinion as follows : " Opposed to the views of a majority of the Court on this point, I think that the Court below should have excluded the deposition on one of the grounds of objection interposed by plaintiff's

counsel—that the official character which Thibault represented in taking the deposition was not properly authenticated. The recitals contained in his own certificate, the name and notarial seal appended to the deposition, is, as I conceive, the only evidence we have that he was by proper authority acting as a Notary Public when he performed this service. These of themselves were clearly insufficient for such a purpose." Furthermore, " that to receive such certificate, seal, and signature, without further authentication, would be a construction utterly opposed to the universal practice of Courts, except where the statute, as it does not in this State, makes the certificate and seal a sufficient authentication."

Let us ascertain how far this proposition is overthrown by the authorities cited. (*Dean* v. *Taggert*, 1 A. K. Marshall, 172.) One of the grounds of objection to the deposition (it being taken out of the State) was " that the persons before whom it was taken were not shown to be Justices of the Peace." The Court says: " We are perfectly satisfied that the certificate of the persons before whom the deposition was taken sufficiently shows them to be Justices of the Peace. It does not, it is true, expressly state them to be Justices of the Peace, but as by the caption of the deposition it purports to be taken by persons to whom a *dedimus* had been issued for that purpose; and as by the *dedimus* those persons taking the deposition are described to be Justices of the Peace, there cannot be a doubt but that these circumstances, under the Act of this county [evidently intending State] for that purpose, are sufficient to show that the persons by whom the deposition is certified to have been taken are Justices of the Peace."

The objection which was passed upon by the Court in that case was not that the certificate of the Justices officiating would be insufficient to show their official character; but it would seem from the opinion that by the law of that State such certificate was made sufficient without other proof, and the Court merely held that the absence of an express averment showing the fact of their official character was supplied by matter contained in the *dedimus* and the caption of the deposition.

In 5 Maine, (Greenleaf) *Clement* v. *Durgin*, 9, the question was " whether a deposition taken under a commission by a person

styling himself as a Judge of the St. Lawrence Court of Common Pleas, in the State of New York, which was objected to by the counsel for the complainant, could be received without proof of the official character of the Judge." In that State, by Chapter 85 of the revised laws, prescribing the mode of taking depositions, Sec. 6, which in this particular the Court says " is a reënactment of the old law," it is provided " that all depositions taken out of this State, before any Justice of the Peace, public notary, or other person legally empowered to take depositions in the State or county where such deposition shall be taken and certified, may be admitted as evidence in any civil action, or rejected at the discretion of the Court." The Court, in pursuance of this statute, adopted a rule to the effect " that in all cases of depositions taken out of the State without commission, it shall be incumbent on the party producing such deposition to prove that it was taken and certified by a person legally empowered thereto ;" " thereby," says the Court, " plainly implying that no such evidence would be required in the case of depositions taken under commission." And the Court held that under these circumstances the deposition was properly admitted in evidence.

In *Bullen* v. *Arnold*, 31 Maine, 583, there is nothing in the report of the case showing whether the deposition was taken within or without the State. The opinion of the Court was delivered orally, and the statement of the case is altogether too meagre to entitle it to any considerable weight as authority under any circumstances. The decision of the Court clearly related to the question presented by the facts before it; and without an understanding of these facts it cannot properly be claimed as authority in support of the more general proposition. A later case than either of those referred to, decided by the Appellate Court of that State, furnishes in some measure an explanation of the grounds of the decision in the case last cited.

In *Palmer* v. *Fogg*, 35 Maine, 368, depositions purporting to have been taken before a Commissioner in Wisconsin, appointed by the Governor of Maine, were objected to by defendant's counsel— claiming " that it was incumbent on the plaintiffs to prove that they were taken and certified by a person legally empowered," etc.

The Court, in response, says: "By the Revised Statutes, Chapter 134, such commissioners and their official acts are placed upon the same footing with Justices of the Peace and their official acts within this State. Hence, authentication *aliunde* is not required." And cites in support of its ruling the case as above (*Bullen* v. *Arnold*). So that it would appear to have been understood by the Court that the official act questioned in 31 Maine, 583, was performed by a magistrate of that State.

In 1 Hill, 249, (*Williams* v. *Eldridge*) a commission to take the deposition of a witness in Canada was issued by one of the New York Courts, directed to certain commissioners by name, one of whom was Solomon Y. Chesley. Upon return of the deposition, signed by S. Y. Chesley, it was objected to for the reason "that it should have been attested by his first name at length." The Court on appeal held "that commissioners under the Act are *quoad hoc* officers of the Court. Their return of evidence is, in effect, like any office copy made by the Clerk of the very Court to which he belongs. The Court, knowing the real name of its officer, is every day in the habit of recognizing his signature as valid, though his first name be denoted only by initials." I am at a loss to discover any analogy between the points made in that case and the one before us. Nor can I perceive wherein a single expression contained in the opinion of the learned Judge militates against the position contended for here.

In 5 Peters, 604, (*The Patapsco Insurance Co.* v. *Southgate et al.*) the only point decided having any bearing on this question is sufficiently stated in the syllabus of the case as reported.

"In the caption of a deposition, taken before the Mayor of Norfolk, to be used in a cause depending, and afterwards tried in the Circuit Court of the United States held in Baltimore, the Mayor stated the witness 'to be a resident in Norfolk;' and in his certificate he states that the reason for taking the deposition is 'that the witness lives at a greater distance than one hundred miles from the place of trial, to wit: in the borough of Norfolk.' It was sufficiently shown by the certificate, at least *prima facie*, that the witness lived at a greater distance than one hundred miles from the place of trial."

The Court furthermore says: "This was a fact proper for inquiry by the officer who took the deposition, and he has certified that such is the residence of the witness." Also cites the case of *Bell* v. *Morrison*, 1 Peters, 356, as deciding "that the certificate of the magistrate is good evidence of the facts therein stated, so as to entitle the deposition to be read to the jury."

The decision of the United States Court in both these cases turns upon a construction given to the Act of Congress of the fourth of September, 1789, chapter twenty, under the authority of which the deposition purported to have been taken, in reference to which the Court (1 Peters, 355) says: "The authority to take testimony in this manner, being in derogation of the rules of the common law, has always been construed strictly, and therefore it is necessary to establish that all the requisites of the law have been complied with, before such testimony is admissible."

The Act of Congress referred to provides "that every person deposing as aforesaid shall be carefully examined, and cautioned, and sworn or affirmed to testify the whole truth, and shall subscribe the testimony by him or her given, after the same shall be reduced to writing, which shall be done only by the magistrate taking the deposition, or by the deponent in his presence. And the deposition so taken shall be retained by such magistrate until he deliver the same with his own hand into the Court for which they are taken, or shall, together with a certificate of the reasons as aforesaid of their being taken, and of the notice, if any was given to the adverse party, be by him, the said magistrate, sealed up and directed to such Court, and remain under his seal until opened in Court."

The Court then proceeds: "Without doubt, the certificate of the magistrate is good evidence of the facts therein stated, so as to entitle the deposition to be read to the jury if all the necessary facts are there sufficiently disclosed. It is not denied that the reducing the deposition to writing in the presence of the magistrate is a fact made material by the statute, and that proof of it is a necessary preliminary to the right of introducing it at the trial. But it is supposed that sufficient may be gathered by intendment from the certificate of the magistrate to justify the presumption that it was done. The certificate was in these words: ' State of Ten-

nessee, Dickson County, ss.   At Charlotte, in said county, on the fourth day of July, 1822, before me, James M. Ross, Justice of the Peace and one of the Judges of the County Court of Dickson County, came personally John Mockbee, being about the age of fifty-one years, and after being carefully examined, and cautioned and sworn to testify the whole truth, did subscribe the foregoing and annexed deposition, after the same was reduced to writing by him in his own proper hand.'   The certificate then proceeds to state the reason for taking the deposition, etc., in the usual form.   It is remarkable that the certificate follows throughout, with great exactness of terms, every requisition in the statute, with the exception as to the deposition being reduced to writing in the presence of the magistrate, and it is scarcely presumable that this was accidentally omitted.   At all events, every word in the certificate may be perfectly true, and yet the deposition may not have been reduced to writing in the magistrate's presence.   If this be so, then there can arise no just presumption in favor of it.   And we think, in a case of this nature, where evidence is sought to be admitted contrary to the rules of the common law, something more than a mere presumption should exist that it was rightly taken.   There ought to be direct proof that the requisitions of the statute have been fully complied with.   We are therefore of opinion that the deposition was properly rejected."

In 11 Howard, 375, *Fowler* v. *Merrill*, the Court disposes of the objection made to a deposition on the authority of these two cases, and furthermore holds that a Probate Judge is a County Judge within the description of the law.   1 Greenleaf on Evidence, Sec. 323, is also referred to as authority on this point.   I cannot perceive that the text lays down any broader rule than is furnished by these three decisions of the Supreme Court; indeed, the author's notes refer to the case in 1st Peters in support of the text, and states the rules in precisely the same language: " That the magistrate's certificate will be good evidence of all the facts therein stated, so as to entitle the deposition to be read, if the necessary facts are therein sufficiently disclosed."   Certainly there is nothing in this to authorize us to extend the rule to other incidental facts, but which are equally essential to the validity of evi-

dence presented in such form : such for instance as the point now being considered, of proving the official character of the Notary who took this deposition. This preliminary fact being established by proper proof, then the certificate of the officer becomes evidence, at least *prima facie*, that the statutory requirements have been observed, if the necessary facts are disclosed in the certificate. In my judgment these authorities go no further.

The other authorities cited—2 C. C. R., 5 McLean, and 1 Paine—are not contained in our libraries, and as to the controlling facts upon which these decisions are founded, the only knowledge we have is such as can be gathered from the Digest; and I can see nothing contained in the synopsis of such cases that in any manner distinguishes them from the rule already stated from the Supreme Court decisions.

Both in this and the former dissenting opinion, in stating what I conceived to be the proper rule, I must be understood as applying it to the facts shown in the case now before us. I do not propose at this time to extend the inquiry further, or suggest what should be held sufficient proof of authorized or official character of the person taking a deposition, if the circumstances were different. It undoubtedly has in some instances been held, that when a deposition has been taken pursuant to a commission issued by judicial authority, the Court will regard the certificate of the commissioner to that effect as sufficient proof of identity, treating the act as done by an officer of the Court. Another exceptional case would probably be, where the party objecting was present when the deposition was taken. And the class of exceptions might be further extended to the uttermost limits which precedent has gone, and yet, as I believe, in no respect conflict with the rule insisted upon in this instance.

The statute in force in this State regulating the manner of taking depositions out of the State provides but the one method, to wit : the issuance of a commission by the authority of the Court or a Judge. A Notary is not one of the officers named to which a commission can be issued, although the parties may agree upon the person to whom it may be issued; and giving to the foregoing decisions all the force which is claimed for them, it would simply

amount to this, that if a commission had been issued by proper authority to take the deposition of Collins, the person so agreed upon as commissioner, or otherwise, the officer designated in the commission might by his own certificate authenticate his official action.    Such a case is not before us.

It is not necessary to again refer to the terms of the agreement made by counsel.    It is shown that no commission was issued, and the officer who took the deposition is not empowered so to do by our statute, and therefore, according to my understanding, it falls not within either the letter or spirit of any rule which is recognized by any of the foregoing authorities.

Let us briefly refer to some other decisions affecting this question, after having considered the statutory provisions bearing upon it. The officers who are authorized by our laws to take depositions out of the State are " Judges, Justices of the Peace, and Commissioners of Deeds appointed by the Governor of this State."    We have no statute which makes a certificate under the signature and seal, or either, of a Judge or Justice, in such a proceeding, sufficient authentication of official character ; but on the contrary, the law does provide that an official act performed by a Commissioner of Deeds may be shown by the certificate and seal of such Commissioner.    (Acts 1864–5, 130 ; Territorial Acts, 1864, 47.)

Under the authority of *Clement* v. *Durgin*, 5 Maine, 9, before cited, the signature and seal of any officer except a Commissioner of Deeds would be rejected as even *prima facie* proof of their official character ; the statute here, like a rule of court in Maine, having confined such mode of authentication to a specified class of officers.

The Revised Statutes of Connecticut, p. 89, Sec. 115, provides that " depositions may be taken in any other State or county by a Notary Public, Commissioner appointed by the Governor of this State, or any magistrate having power to administer oaths, and the witness * * * shall subscribe his deposition and make oath to it before such authority, who shall attest the same, and certify that the adverse party or his agent was present, (if so) or that he was notified ; and shall also certify the reason of taking such deposition,

shall seal it up, direct it to the Court where it is to be used, and deliver it if desired to the party at whose request it was taken."

The reference notes to this section cite *Thompson* v. *Stewart*, 3 Conn. R. 171, wherein a deposition taken in another State was accompanied by a certificate of the County Clerk, authenticated under the seal of the county that such person was a Justice of the Peace, was held sufficient.

In *Allen* v. *Perkins*, 17 Pickering, 369, objections were made to a deposition taken before Searle, a Justice of the Peace in Rhode Island, unless the fact that Searle was at the time a Justice of the Peace should be proved by the record of his appointment and qualification. But it was ruled that "it might be proved by evidence that he was at the time acting in the capacity, and in fact exercising the office of Justice of the Peace." The Court say: "Here it was proved to the satisfaction of the Court, that the Justice taking the deposition was an acting Justice of the Peace. This kind of proof has always been held good *prima facie* evidence of the appointment and qualification of a magistrate so as to authorize him to take depositions." In this case the deposition appears to have been taken without a commission—merely upon notice. In *Adams* v. *Graves*, 18 Pick. 355, it was held "that by a rule of court where a deposition is taken under a commission directed to any Justice, etc., the certificate of execution on the return of such commission by a person professing to act as such magistrate shall be *prima facie* evidence of his official character, and the burden of proof shall lie on the objecting party."

The inference to be derived from these decisions is, that the statutes of that State were silent in respect to the authentication necessary in such cases, and the Court by rule supplied the omission in part by providing that when a deposition was taken in conformity with a commission, the certificate of the magistrate was to be deemed *prima facie* evidence of his official character; whereas proof *aliunde* such certificate was requisite when the deposition was taken merely upon notice.

In New Hampshire, (see *Shepherd* v. *Thompson*, 4 N. H. 215) it seems the Court by rule prescribed that "the Clerk of the Court in the county where the action is pending may issue a commission

to take depositions in the vacation, which commission shall be directed to any Justice of the Peace, Notary Public, or other officer legally empowered to take depositions or affidavits in the State or County where the deposition is to be taken."

A deposition taken in New York, by commission, under the aforesaid rule, was objected to because " it did not appear that the person who took the deposition had any authority to take depositions, or that he was a Justice of the Peace or Notary Public." The Court said : " We think this objection is well founded. It has always been the uniform practice of the Court to require evidence that the person who took the deposition was duly qualified, whether it were taken under our statute or under a commission. Slight evidence has often been deemed sufficient, but no deposition taken abroad has ever been received, unless by consent of the opposite party, without such proof."

The same Court (opinion by Parker, J.) in *Dunlap* v. *Waldo*, 6 N. H. 450, had further occasion to consider the question as to the measure of evidence necessary to show the official character of the officer taking a deposition in another State. A deposition was taken before a Justice of the Peace in Madison County, New York, and to show that " Chapman, before whom it was taken, was a Justice," a certificate was offered, purporting to be " signed by the Clerk of said Madison County, and to have the seal of the county affixed to it ; that Chapman was, at the time of taking said deposition, one of the Justices of the Peace for said county, duly elected and qualified ; and that the Clerk was acquainted with his handwriting, and believed the signature to the caption to be his proper handwriting and signature."

The deposition was received, and upon appeal the Court says : " In holding that the certificate of the County Clerk is competent evidence of such appointment, we do not mean to be understood that other evidence is to be excluded. · Evidence that the individual is an acting magistrate has uniformly been held to be sufficient *prima facie* for such purpose."

Again, in the case of the *State* v. *Stone*, 12 N. H. 90, the same Court distinctly approves of the rulings in the last two cases, and reäffirms the construction given to the rule. The rule of court

commented on in these cases, it will be noted, did not prescribe what form of evidence was necessary to show the official character of the officer; but in this particular it stands on an equal footing with our statutes.    Under these authorities, the certificate of Thibault would be clearly insufficient.

In Louisiana (14 La. Ar. 795) it was held that "the capacity and signature of a Justice of the Peace, who has taken a deposition under a commission in another State, must be established by the certificate of the Governor, under the great seal of the State." (20 U. S. Digest, 363, Sec. 35.)

In Vermont (1 Chip. 176) the Court ruled that "a deposition taken by a Notary Public in another State does not authenticate itself."    (2 U. S. Digest, 210, Sec. 57.)

In Illinois (2 Scam. 348) it is stated that "if a commission to take depositions in another State is not directed to commissioners, and the depositions are taken by a Justice of the Peace, his official character should be certified under the seal of a Court of Record, or the great seal of the State where the depositions are taken." (4 U. S. Digest, 660, Sec. 12.)

A similar rule prevails in Indiana with reference to affidavits. (*Hagaman* v. *Stafford*, 2 Blackf. 176; *Doughton* v. *Tillay*, 4 Blackf. 433.)    Also, respecting an answer to a bill of discovery as evidence, *Id*.    The manner of authenticating depositions in the last named State is regulated by statute, and the authorities which in given cases recognize a certificate of the officers to be sufficient proof are within the terms of the statute.    (See 2 Indiana Revised Statutes, Secs. 260–1.)

And so far as we have the facilities at our command for ascertaining the facts, it will be seen, with scarce an exception, that wherever it has been held that a certificate or seal proves itself for the purposes stated, such holding is in pursuance of the express commands of the statute or a rule of the Court.

The points considered in each of the foregoing cases involved the proceedings of officers who, by force of the law, were empowered to take depositions.    Notaries Public not being within the description, the same presumptions of law do not attach to their official acts.    In treating of certificates as evidence, (1 Starkie on Evi-

dence, 382) it is stated that " a protest as to the presentment and nonacceptance of a foreign bill of exchange, attested by a Notary Public, is evidence of those facts in an action upon a bill. This is a relaxation of the strict rule from a principle of great convenience." The doctrine of the text is illustrated by numerous authorities referred to in the notes; and that the effect of such a certificate as evidence is limited to this, the one matter, (except when enlarged by statute) is abundantly shown by the same authorities. On this point, in Louisiana, (*Phillips* v. *Flint*, 3 Mill's Lou. Rep. 146, 149) it is said : " These notarial acts may be considered as an exception to the general rule that the acts of a person assuming power of an officer of a foreign State—when contested in a Court of justice— can have no weight until his capacity be proven." To the same purport has it been held in Pennsylvania, (10 Sergeant & Ball, 160) also in Maryland, (3 Harr. & John. 71, 74) and the annotator concludes, that " a Notary's certificate is in general only evidence of such acts as he does under the *lex mercatoria*, has been recognized in several cases." (Part 2, Cowen & Hill's Notes, 1,053.)

Since writing the foregoing, my attention has been called to an additional clause embodied in the prevailing opinion in this case. It is true, in 1 Greenleaf, Sec. 5, p. 7, the rule is thus broadly stated, that " the seal of a Notary Public is also judicially taken notice of by the Courts, he being an officer recognized by the whole commercial world." But when we weigh the language, in connection with the context in which it occurs, and more especially observe the points embraced in the decision referred to by the accompanying notes, it cannot be doubted that the rule, as stated in the text, was designed to apply only to the official acts of such officer falling within the range of the *lex mercatoria*. This inference is strengthened by Sec. 183, p. 197, second volume of the same work, where the subject matter is more fully considered. And here I hesitate not to add, that the general terms in which the rule is stated in the section first quoted, is but one of the many instances found in this treatise, which, if accepted in its literal and unqualified sense, would differ widely from the prescriptions of the law, as given us by the most eminent jurists; thus serving oftentimes to mislead the inquirer

Sargent *v.* Collins.

concerning questions of the first importance. These defects, which in so great a degree detract from its general merit and usefulness, are so well understood by the legal profession and the Courts as to render unnecessary any extended criticism.

In Chitty on Bills, 655, the rule there stated relates to protests only; and the case referred to in the accompanying notes of the same work are of similar character.

The case in 6 Serg. & Rawle is alluded to. By an Act of the Pennsylvania Legislature, second January, 1815, " the official acts, protests, and attestations of Notaries Public, certified according to law, under their respective hands and seals of office, may be received as evidence, provided any party may contradict by other evidence any such certificate." Under a construction of this Act, in the case referred to, (*Brown* v. *Philadelphia Bank*, 6 Serg. & Rawle, 484) the question arising from a protest of commercial paper, by a Notary acting under authority of that commonwealth, the Court held that " notice to the indorser of the nonpayment of a promissory note is an official act, and the protest is *prima facie* evidence thereof," and " the certificate of the Notary under such seal is *prima facie* evidence that such person is a Notary Public."

The authority of *Mott* v. *Smith*, 16 Cal. 533, I cannot perceive in any respect affects the question under discussion. One of the points made in that case was, that " the Court below erred in admitting a deed in evidence, when the only proof of its execution was the certificate of acknowledgment of Albert.B. Bates, principal Notary Public of the Hawaiian Islands, and George A. Lathrop, United States Vice-Consul for Honolulu, Hawaiian Islands. On appeal the ruling of the lower Court was sustained, and I do not propose to question either the reasoning or conclusions of the learned Judge [Field] who therein pronounced the opinion of the Court. But we must not confound a question, decided upon a construction of the statute regulating *conveyances*, with the totally different one, governed by the provisions of our civil code, in respect to depositions. In the California Act, to which in certain particulars a construction was given in the case last cited, Secs. 4, 29, and 31, are in all respects identical with ours. (See new Act concerning Conveyances, Statutes 1861, p. 11.) Says the Court, (page 552)

in the case of *Mott* v. *Smith*, "the fourth section of the Act of April 16th, 1850, concerning Conveyances, specifies the officers by whom the proof or acknowledgment of any conveyance affecting real estate may be taken, and provides that when the conveyance is acknowledged or proved without the United States, it may be taken by any 'Judge or Clerk .of any Court of any State, kingdom or empire having a seal, or by any Notary Public therein, or by any Minister, Commissioner, or Consul of the United States appointed to reside therein.' The twenty-ninth section of the Act provides that 'every conveyance or other instrument conveying or affecting real estate, which shall be acknowledged or proved and certified as hereinafter prescribed, may, together with the certificate of acknowledgment or proof, be read in evidence without further proof.' And the thirty-first section declares that 'neither the acknowledgment, nor the proof of any such conveyance or instrument, nor the record, nor the transcript of the record of such conveyance or instrument, shall be conclusive, but the same may be rebutted.'

"The word 'hereafter,' says the distinguished jurist, "in the twenty-ninth section, is evidently a misprint or a mistake in the enrollment of the Act for 'herein,' as the provisions to which it refers precede the section."

On a construction of this statute, the Court holds that "the certificates were *prima facie* evidence of the official character of the persons by whom they were given." And I cannot see how it could have been decided otherwise, when the statute distinctly makes the certificate, primarily, evidence of the facts stated therein, which are connected with such acknowledgment, but liable to be rebutted by opposing evidence. This is all, so far as I can see, that the Court assumed to decide in that case; and if any casual expression contained in the opinion warrants a more extended construction, it is mere *obiter*, as the point presented to the Court was simply "whether or not the certificates of the officers named were *prima facie* sufficient, under the statute, to entitle the conveyance to be admitted in evidence." Inasmuch, therefore, as the conclusion of the Court depended upon a construction of the statute, it would naturally follow that the authorities cited in support of its ruling were also governed by the statutes of the respective States

in which the question arose; and indeed, such is true with respect to all of the cases referred to, so far as I have the means of ascertaining. Some of them I have already noticed in a former part of this opinion. In these, as well as in *Freeman* v. *Cameron,* 24 Wend. 87; *Morris* v. *Wadsworth,* 17 Id. 103; *St. John* v. *Croel,* 5 Hill, 574; and *Livingston* v. *McDonald,* 9 Ohio, 169, the questions raised which are at all pertinent here, rested upon the certificates of acknowledgment appended to the conveyance and the statute there passed upon, and are not materially different in the one particular—that is, as to the effect of the certificate as evidence—from the law as defined both here and in California. And if this were an inquiry growing out of the statute concerning conveyances, I should not hesitate to pronounce a notarial certificate possessing the statutory requisites as a sufficient *prima facie* showing of official character. But does this excuse, much less justify, the absence of other proof in a totally different matter, and allow the same credibility to be given it when it is seen that the statute in relation to depositions has not, as in the former instance, provided that " the certificate may be read in evidence without further proof ?"

The simple statement of the proposition carries with it its own refutation. Hence I conclude that the authorities last considered, if they have any possible bearing upon the question at issue, only present in a more forcible light the correctness of the rule I have urged in this case ; and for a reason before stated in a somewhat different form, that " as the statute does in express terms impart to a notarial certificate in a given case the force of *prima facie* evidence, the legal presumption arises that such effect of the certificate must be confined to the particular thing expressed." This, of course, subject to the exceptions covered by the law merchant. In response to the suggestions contained in the last paragraph of the opinion of my associate, I will merely say this : the question of authority to take the deposition is one thing, the evidence of the execution of that authority is another. So far as the acknowledgment of conveyance is concerned, the statute is the Notary's authority ; whilst in the deposition taken in this case this authority is contained in the agreement of the parties. But here the analogy between the two cases ends ; because in the former instance, the

statute waives other proof as to official character for the time being; at least, by declaring the officer's certificate *prima facie* evidence; whereas in respect to the depositions the parties have not consented to such waiver, nor has the statute done so, as in the other case.

No such legal effect is given to the certificate as in the matter of conveyances.

It is desirable at all times to observe the rules of construction most generally recognized by the highest Courts of other States, under similar circumstances; and it seems to me after a somewhat careful examination of decisions within our reach, that at least the weight of authority is opposed to the ruling made in the Court below, in receiving the deposition as evidence, under the attending circumstances. I am therefore compelled to dissent from the conclusion of my brother Judges, so far as it concerns the one point herein discussed.